UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LESLIE BETHEL, *on behalf of herself
and all others similarly situated*,

Plaintiff,

-v.-

BLUEMERCURY, INC., *a Delaware
corporation*,

Defendant.

21 Civ. 2743 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Leslie Bethel brings this action for violations of the Fair Labor

Standards Act (the "FLSA"), 29 U.S.C. §§ 201-219, and the New York Labor Law

(the "NYLL"), N.Y. Lab. Law §§ 195, 650-666, alleging that Defendant

BlueMercury, Inc. ("BlueMercury") failed to pay overtime wages and provide

wage statements to its Store Managers.  Plaintiff, joined by opt-in plaintiffs

Katherine McCloskey, Leyna B. Hanson, Gustavo Espinoza, Lourdes Lima,

Alexa Suart, Ruben Bermudez, Albert Paris Suazo, and Joseph Montefinese

(the "Opt-In Plaintiffs," and together with Plaintiff, "Plaintiffs"), now moves for

conditional certification of a nationwide collective and related relief under

Section 216 of the FLSA.[1]  Separately, Plaintiffs move for equitable tolling on

behalf of the putative collective action members.  For the reasons that follow,

---

[1]     When McCloskey consented to join the case, she signed her name as "Katherine
Henriksen."  (Dkt. #15).  In her more recent declaration submitted in support of
Plaintiffs' motion, McCloskey's name was stated as "Katherine Henriksen McCloskey"
and signed as "Katherine McCloskey."  (Dkt. #30 at 14-16).  For consistency, the Court
refers to McCloskey using the name provided on her most recent submission.

Plaintiffs' motion for conditional collective certification is granted as to a more circumscribed collective of New York-based Store Managers. By contrast, Plaintiffs' motion for equitable tolling is denied without prejudice.

## BACKGROUND[2]

### A.    Factual Background[3]

Defendant is a Delaware corporation with a principal place of business in Jupiter, Florida, that operates BlueMercury retail stores in over 20 states, including New York, Florida, California, and New Jersey. (Compl. ¶ 16). All told, Defendant operates approximately 161 stores nationwide. (Pl. Br. 2).

Plaintiffs worked as Store Managers at Defendant's retail stores. Plaintiff worked for Defendant in three of its stores in New York, New York, from approximately March 2018 to March 2019. (Bethel Decl. ¶¶ 2-3). The Opt-In Plaintiffs who have submitted declarations in connection with the present

---

[2]    The facts in this Opinion are drawn from the Complaint ("Compl." (Dkt. #1)) and the declarations of Plaintiff, Leyna Hanson, Katherine McCloskey, and Gustavo Espinoza submitted in support of Plaintiffs' motion for conditional certification (Dkt. #30). The Court refers to these declarations using the convention "[Name] Decl."

For ease of reference, the Court refers to Plaintiffs' memorandum of law in support of the motion for conditional certification as "Pl. Br." (Dkt. #29); Defendant's opposition brief as "Def. Opp." (Dkt. #31); and Plaintiffs' reply brief as "Pl. Reply" (Dkt. #38).

[3]    Plaintiffs bear the burden on a Section 216(b) motion. Accordingly, the Court focuses primarily on Plaintiffs' account of the facts at this stage of the litigation. *See Myers* v. *Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (describing the "modest factual showing" needed for a motion for conditional certification). The Court "grant[s] the plaintiff[s] the benefit of the doubt given the posture of this motion." *Williams* v. *Movage Inc.*, No. 17 Civ. 2628 (KPF), 2018 WL 1940435, at *1 n.2 (S.D.N.Y. Apr. 24, 2018) (quoting *Mendoza* v. *Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629 (KPF), 2013 WL 5211839, at *1 n.1 (S.D.N.Y. Sept. 16, 2013)). By contrast, the Court does not consider the factual assertions contained in Defendant's opposition brief or the declarations filed in opposition to Plaintiffs' motion. *See Escobar* v. *Motorino E. Vill. Inc.*, No. 14 Civ. 6760 (KPF), 2015 WL 4726871, at *3 (S.D.N.Y. Aug. 10, 2015); *see also Bhumithanarn* v. *22 Noodle Market Corp.*, No. 14 Civ. 2625 (RJS), 2015 WL 4240985, at *4 (S.D.N.Y. July 13, 2015).

motions worked in Defendant's stores in Charleston, Mt. Pleasant, and Kiawah Island, South Carolina (Hanson Decl. ¶ 3); Edina, Minnesota (McCloskey Decl. ¶ 3); and Coral Gables, Miami Beach, and Boca Raton, Florida (Espinoza Decl. ¶ 2).[4]  As Store Managers, Plaintiffs assisted customers, received and unpacked products, cleaned, and assisted with merchandising.  (Bethel Decl. ¶ 4; Hanson Decl. ¶ 4; McCloskey Decl. ¶ 4; Espinoza Decl. ¶ 4; *see also* Jones Decl., Ex. E-F (copies of Defendant's job postings for Store Managers in numerous stores)).  Plaintiffs were paid on an hourly basis and were classified as non-exempt workers.  (*Id.*).

Plaintiffs seek conditional certification of a FLSA collective comprising "[a]ll non-exempt, hourly Store Managers employed by [Defendant] at any location in the United States for the three (3) years preceding the filing of this action."  (Pl. Br. 1).  In connection with this motion, Plaintiffs allege that Defendant maintains a "uniform, common[,] and widespread policy pursuant to which Plaintiffs and other [Store Managers] were required to respond to phone calls and text messages from their stores and their supervisors when they were out of the store and off-the-clock, without compensation" (the "Policy").  (Pl. Br. 4 (citing Bethel Decl. ¶ 10; Hanson Decl. ¶ 9; McCloskey Decl. ¶ 9; Espinoza Decl. ¶ 9)).  According to Plaintiffs, the Policy is the same at all BlueMercury stores and is "not unique to any specific location or particular supervisor(s)."  (*Id.*).

---

[4]    Plaintiffs have not identified the stores or states in which the remaining Opt-In Plaintiffs (Lima, Suart, Bermudez, Suazo, and Montefinese) worked.

By way of illustration, Hanson avers that as a Store Manager in Defendant's Charleston, Mt. Pleasant, and Kiawah Island, South Carolina, retail stores, she regularly worked more than the 40 hours that she was scheduled to work per week. (Hanson Decl. ¶ 8). Hanson explains that her overtime work was occasioned by the fact that she "routinely received and responded to communications from my District Manager ('DM') and other employees from my store via telephone, text message, and group messaging on my days off, or before and/or after my shifts when I was not in the store, and off the clock." (*Id.* at ¶ 9). Hanson alleges that she was "expected to respond to these communications when they were received[,]" but that Defendant "did not compensate [her] and other [Store Managers] for the time [they] spent engaging in these work-related communications while not in the store and off the clock." (*Id.*). Hanson states that she received phone calls from her DM and other employees at her store approximately three times per week while not working in the store. (*Id.* at ¶ 12). She further claims that "20 to 30 times a week, while [she] was not working the store, [she] also received text messages from [her] DM and other store employees." (*Id.*). All said, Hanson asserts that she spent between three and five hours per week responding to work-related messages while out of the store and off the clock. (*Id.* at ¶ 13). Hanson suggests that these experiences are not unique, identifying two other Store Managers who also were required to respond to communications while off the clock but were not compensated for this labor. (*Id.* at ¶ 17).

4

Plaintiff attributes the Policy to "tight labor budgets[.]" (Compl. ¶ 10). According to Plaintiff, Defendant's budgets do not allow Store Managers sufficient time to perform the customer service and other tasks that they are required to complete each day. (*Id.*). "As a result," Plaintiff claims, "to ensure that they do not exceed [Defendant's] established labor budgets, Store Managers, including [Plaintiff] are forced to work off the clock" as described above. (*Id.*). Plaintiff alleges that Defendant is aware that its Store Managers are forced to work uncompensated overtime hours, but has continued not to compensate them for these hours or to accurately reflect the number of hours its Store Managers work in its time records. (*Id.* at ¶¶ 34-38).

## B. Procedural Background

Plaintiff filed the Complaint in this case on March 31, 2021. (Dkt. #1). On May 19, 2021, Defendant filed its answer to the Complaint (Dkt. #11), and the parties were automatically referred to the Court's mediation program shortly thereafter (Dkt. #13). Following this referral, Plaintiff filed notices reflecting that several of the Opt-In Plaintiffs, including McCloskey, Hanson, Espinoza, and Lima, had consented to join the case. (Dkt. #15-18).

On August 13, 2021, Plaintiffs filed a letter requesting that the case be removed from mediation. (Dkt. #19). In the letter, Plaintiffs explained that in a pre-mediation conference held with the mediator, Plaintiffs' counsel indicated their intent to mediate on behalf of the putative nationwide collective. (*Id.* at 2). Defendant's counsel, per Plaintiffs' letter, "maintained that it would only mediate on behalf of the Plaintiffs." (*Id.*). This impasse as to the appropriate

scope of the mediation led Plaintiffs to conclude that mediation would be "futile." (*Id.*). Indeed, Plaintiffs stated that the parties would "not be able to agree on the core issue of scope ... of the mediation until there is a ruling on Plaintiffs' anticipated motion for conditional certification, which will establish the scope of the case[.]" (*Id.*). The Court endorsed Plaintiffs' letter on August 16, 2021, withdrawing the case from mediation and setting a briefing schedule for Plaintiffs' anticipated motion for conditional certification. (Dkt. #20).

Plaintiffs filed their motion for conditional collective certification and supporting papers on September 24, 2021. (Dkt. #27-30). Defendant filed a memorandum of law and supporting declarations on October 25, 2021 (Dkt. #31-32), arguing that conditional certification of a nationwide collective is inappropriate because, among other reasons, the Court lacks personal jurisdiction over claims brought by Store Managers who neither resided nor worked for Defendant in New York (Dkt. #31 at 13-18). A few days later, on October 29, 2021, Plaintiffs filed a letter requesting both an extension of time and an extended page limit for their reply brief. (Dkt. #33). Plaintiffs asserted in this letter that Defendant's "belated" jurisdictional argument "insert[ed] a significant issue in the litigation, which requires significantly more briefing than Plaintiff can address in a 10-page reply[.]" (*Id.* at 2). After Defendant submitted an opposition letter (Dkt. #36), the Court granted Plaintiffs' request and authorized them to file a reply brief that included "no more than 10 additional pages that shall be limited solely to the issue of personal

jurisdiction" (Dkt. #37). Plaintiffs ultimately filed their reply brief on November 15, 2021. (Dkt. #38). Following the close of briefing, Plaintiff filed notices reflecting that the remaining Opt-In Plaintiffs — Suart, Bermudez, Suazo, and Montefinese — had consented to join the case. (Dkt. #42-44).

On April 26, 2022, Plaintiffs filed a motion and supporting memorandum of law for equitable tolling of the limitations period for claims brought by Plaintiffs and potential other opt-in plaintiffs from November 15, 2021 (the date briefing concluded on Plaintiffs' motion for conditional certification), until the date of the Court's order on Plaintiffs' motion for conditional certification. (Dkt. #45-47). Defendant filed a brief in opposition to the motion on May 10, 2022. (Dkt. #48). Plaintiffs filed a reply brief on May 16, 2022. (Dkt. #49). Thus, Plaintiffs' motions are fully briefed and ripe for the Court's decision.

## DISCUSSION

### A. Applicable Law

#### 1. The FLSA Generally

The FLSA permits aggrieved employees to bring collective actions against their employers for unlawful employment practices. The statute authorizes suits "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Unlike class actions brought under Federal Rule of Civil Procedure 23, FLSA collective actions need not satisfy the standards of numerosity, typicality, commonality, or representativeness. *Young* v. *Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005); *see also* Fed. R. Civ. P. 23(a). "Also unlike Rule 23, only

potential plaintiffs who 'opt in' by filing written consents to join the collective action can be 'bound by the judgment' or 'benefit from it.'" *Mendoza* v. *Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629 (KPF), 2013 WL 5211839, at *2 (S.D.N.Y. Sept. 16, 2013) (quoting *Gjurovich* v. *Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003)).  District courts may, in their discretion, "facilitat[e] notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs."  *Myers* v. *Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Hoffmann-La Roche Inc.* v. *Sperling*, 493 U.S. 165, 169 (1989)).

### 2.      Collective Certification Under Section 216(b) of the FLSA

The Second Circuit has endorsed a two-step method to certify FLSA collective actions.  *Myers*, 624 F.3d at 555.  At the first step, courts consider whether "to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred."  *Id.* (citations omitted).  At the second step, "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs."  *Id.*  This second step "typically occurs after the completion of discovery[.]"  *Bifulco* v. *Mortg. Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009).  At the latter stage, the court may "'decertify the class or divide it into subclasses, if appropriate.'"  *McGlone* v. *Contract Callers, Inc.*, 867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012) (quoting *Iglesias-Mendoza* v. *La Belle Farm, Inc.*, 239 F.R.D. 363, 369 (S.D.N.Y. 2007)).

Plaintiffs bear a low burden at the first step: They need only "make a modest factual showing that they and others together were victims of a common policy or plan that violated the law." *Glatt* v. *Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016). Upon such a showing, plaintiffs may send notice to other potential plaintiffs "who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Myers*, 624 F.3d at 555. "Because minimal evidence is available at this stage, this determination is made using a 'relatively lenient evidentiary standard.'" *McGlone*, 867 F. Supp. 2d at 442 (quoting *Mentor* v. *Imperial Parking Sys., Inc.*, 246 F.R.D. 178, 181 (S.D.N.Y. 2007)). "However, certification is not automatic." *Taveras* v. *D & J Real Estate Mgmt. II, LLC*, 324 F.R.D. 39, 41 (S.D.N.Y. 2018). "Although a plaintiff's factual showing is modest, it cannot be satisfied by unsupported assertions or conclusory allegations." *Id.*

At the first stage, "'the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations.'" *Winfield* v. *Citibank, N.A.*, 843 F. Supp. 2d 397, 402 (S.D.N.Y. 2012) (quoting *Cunningham* v. *Elec. Data Sys. Corp.*, 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010)); *see also Bocel* v. *Patzeria Fam. & Friends Inc.*, No. 21 Civ. 7384 (LGS), 2022 WL 1125624, at *2 (S.D.N.Y. Apr. 15, 2022) (same). Courts in this District have therefore held that an FLSA collective action may be conditionally certified based upon even a single plaintiff's affidavit. *See Escobar* v. *Motorino E. Vill. Inc.*, No. 14 Civ. 6760 (KPF), 2015 WL 4726871, at *2 (S.D.N.Y. Aug. 10, 2015) (collecting cases).

9

B.     **Analysis**

1.     **The Court Will Conditionally Certify a Collective Action**

Plaintiffs seek conditional certification of a collective of "[a]ll non-exempt, hourly Store Managers employed by Defendant … at any location in the United States for the three … years preceding the filing of this action."  (Pl. Br. 1).  Defendant opposes conditional certification on the grounds that (i) Plaintiffs have failed to adequately demonstrate that Store Managers were subject to a common unlawful policy; (ii) Plaintiffs' claims are too individualized to be resolved on a collective basis; and (iii) a nationwide collective is inappropriate because the Court lacks personal jurisdiction over the claims of potential opt-in members who did not work for Defendant in New York.  (Def. Opp. 4-13).  As it will explain, the Court finds that conditional certification is appropriate, but limits the conditional collective to Store Managers who worked for Defendant in New York during the three years prior to the filing of this case.

a.     **Common Policy or Plan**

To begin, the Court finds that Plaintiffs have met their modest burden of showing that "similarly situated plaintiffs do in fact exist."  *Cancino* v. *Janbar, Inc.*, No. 18 Civ. 7219 (PAE), 2019 WL 4023638, at *2 (S.D.N.Y. Aug. 27, 2019) (quoting *Myers*, 624 F.3d at 555) (internal quotation marks omitted).  Plaintiffs allege that Store Managers at each of Defendant's retail stores are required to be available both before and after their shifts and on their days off to communicate with their DMs and other store employees, and that Defendant does not compensate them for this work.  (*See* Bethel Decl. ¶¶ 6-16; Hanson

Decl. ¶¶ 6-15; McCloskey Decl. ¶¶ 5-13; Espinoza Decl. ¶¶ 5-15).  Contrary to Defendant's assertion that Plaintiffs have "submitted only threadbare and conclusory allegations as purported evidence to support the proposed collective" (Def. Opp. 5), Plaintiffs have alleged with a fair degree of precision the number of hours of unpaid work Defendant required them to complete per week (*see* Bethel Decl. ¶ 14 (three to four hours); Hanson Decl. ¶ 13 (three to five hours); McCloskey Decl. ¶ 11 (one to two hours); Espinoza Decl. ¶ 13 (two hours)), and the form that the work took (*see* Bethel Decl. ¶ 10; Hanson Decl. ¶ 9; McCloskey Decl. ¶ 9; Espinoza Decl. ¶ 9).  And while "courts 'often authorize notice based solely on the personal observations of one plaintiff's affidavit[,]'" *Aleman-Valdivia* v. *Top Dog Plumbing & Heating Corp.*, No. 20 Civ. 421 (LDH) (MMH), 2021 WL 4502479, at *4 (E.D.N.Y. Sept. 30, 2021) (quoting *Juarez* v. *449 Rest., Inc.*, 29 F. Supp. 3d 363, 369 (S.D.N.Y. 2014)), Plaintiffs have marshaled a more significant record in this case by submitting four declarations describing their personal experiences with the Policy and naming additional Store Managers who also directly experienced the Policy.  (*See* Bethel Decl. ¶ 18 (stating that Plaintiff spoke with "Amanda (last name unknown) who worked at the Madison Avenue location" and stated that she had also been subjected to the Policy); Hanson Decl. ¶ 17 (averring that Hanson "spoke with other [Store Managers], including Annie Wheeler and Brandi Hurley, about us being engaged in communications … while off the clock")).[5]  Taken together,

---

[5]     While Defendant argues that Plaintiffs impermissibly rely on hearsay statements to demonstrate that they and other Store Managers are similarly situated (*see* Def. Opp. 8-10), "plaintiff[s] may present evidence of a common policy through pleadings, affidavits,

Plaintiffs' evidence is sufficient at the conditional certification stage to demonstrate that Plaintiffs "were subjected to certain wage and hour practices at [BlueMercury] and to the best of their knowledge, and on the basis of their observations, their experience was shared by members of the proposed class." *Carusillo* v. *Fansided, Inc.*, No. 20 Civ. 4766 (JPO), 2021 WL 4311167, at *5 (S.D.N.Y. Sept. 21, 2021).

Defendant's arguments against conditional certification are unavailing. Defendant first suggests that conditional certification is inappropriate because the Policy does not, in fact, exist.  (*See* Def. Opp. 12 (citing declarations submitted in opposition to Plaintiffs' motion in which several DMs assert that they never required their Store Managers to work uncompensated overtime hours)).  Given the "ample case law holding that consideration of the merits is absolutely inappropriate at the conditional approval stage[,]" Defendant's evidence purporting to contradict or undermine Plaintiffs' allegations is plainly premature and does not preclude conditional certification.  *Wood* v. *Mike Bloomberg 2020, Inc.*, 484 F. Supp. 3d 151, 158 (S.D.N.Y. 2020); *see also Filho* v. *OTG Mgmt., LLC*, No. 19 Civ. 8287 (ALC) (SN), 2021 WL 1191817, at *2 (S.D.N.Y. Mar. 30, 2021) (explaining that at the conditional certification stage, "the court does not 'resolve factual disputes, decide substantive issues going to

---

and declarations, including any hearsay statements contained therein." *Filho* v. *OTG Mgmt., LLC*, No. 19 Civ. 8287 (ALC) (SN), 2021 WL 1191817, at *3 (S.D.N.Y. Mar. 30, 2021) (citing *Chhab* v. *Darden Restaurants, Inc.*, No. 11 Civ. 8345 (NRB), 2013 WL 5308004, at *9 (S.D.N.Y. Sept. 20, 2013)).

the ultimate merits, or make credibility determinations'" (quoting *Diaz* v. *N.Y.
Paving Inc.*, 340 F. Supp. 3d 372, 382 (S.D.N.Y. 2018))).

Relatedly, the Court rejects Defendant's argument that Plaintiffs'
overtime claims are too individualized to permit collective treatment.  At the
outset, the Court observes that both it and other courts in this Circuit have
conditionally certified collectives asserting similar overtime claims.  *See, e.g.*,
*Filho*, 2021 WL 1191817, at *5 (conditionally certifying a collective where
plaintiffs alleged "a practice of failing to compensate workers for the totality of
hours worked, including potential overtime hours" for conditional certification
purposes); *Ruiz* v. *Truffa Pizzeria & Wine Room Corp.*, No. 20 Civ. 8645 (LJL),
2021 WL 568249, at *4 (S.D.N.Y. Feb. 15, 2021) (conditionally certifying class
where the plaintiff "identified cooks, food preparers, and dishwashers all of
whom ... worked more than eight hours a day and more than forty hours per
week without overtime"); *Campos* v. *Lenmar Rest. Inc.*, No. 18 Civ. 12359 (KPF),
2019 WL 6210814, at *4 (S.D.N.Y. Nov. 21, 2019) (conditionally certifying a
collective where the plaintiff alleged that he "was subject to a specific policy of
being forced to work hours that were not accounted for in his paycheck,
causing him to be consistently underpaid throughout his employment"); *Beaton*
v. *Verizon New York, Inc.*, No. 20 Civ. 672 (BMC), 2020 WL 5819902, at *4
(E.D.N.Y. Sept. 30, 2020) (observing that "an allegation that 'employees were
required to work off-the-clock, beyond their regularly scheduled shift, provides
a sufficient factual nexus ... to support conditional [certification]'" (quoting
*Garcia* v. *Chipotle Mexican Grill, Inc.*, No. 16 Civ. 601 (ER), 2016 WL 6561302,

at *8 (S.D.N.Y. Nov. 4, 2016)); *Meo* v. *Lane Bryant, Inc.*, No. 18 Civ. 6360 (JMA) (AKT), 2019 WL 5157024, at *7 (E.D.N.Y. Sept. 30, 2019) (finding that "[p]laintiff has sufficiently alleged an unlawful policy, according to which Plaintiff was required to work 'off-the-clock' overtime hours for which she alleges she was not compensated in violation of the FLSA and NYLL"). "To be sure, [Defendant] will be at liberty later to move for de-certification as to any such employee if, after discovery, it appears that the employees at issue were not in fact similarly situated.  But [Plaintiffs'] showing to date is sufficient." *Cancino*, 2019 WL 4023638, at *3.

Notwithstanding this weight of authority, Defendant asserts that "[c]ourts regularly recognize that off the clock work allegations are often inappropriate for certification because of the individualized nature of the claims, regardless of the underlying merits." (Def. Opp. 10).  But as noted in Plaintiffs' briefing (*see* Pl. Reply 3), Defendant relies on a series of inapposite decisions to support this argument.  For instance, Defendant begins by citing *Zivali* v. *AT & T Mobility, LLC*, 784 F. Supp. 2d 456 (S.D.N.Y. 2011).  (*See* Def. Opp. 10-11).  A brief review of this case reveals that it addresses a motion to decertify a collective action, and thus has no bearing on the issue now before the Court.  *See id.* at 459.  Defendant similarly misplaces its reliance on *Thind* v. *Healthfirst Mgmt. Servs., LLC*, No. 14 Civ. 9539 (LGS), 2016 WL 7187627, at *3 (S.D.N.Y. Dec. 9, 2016), another decertification decision that is not relevant here.  (*See* Def. Opp. 11).  And while Defendant also relies on *Diaz* v. *Electronics Boutique of America, Inc.*, No. 04 Civ. 840 (JTE), 2005 WL 2654270, at *5

(W.D.N.Y. Oct. 17, 2005), a decision finding that overtime claims were too individualized to warrant collective treatment at the conditional certification stage, "*Diaz* is against the weight of authority." *Beaton*, 2020 WL 5819902, at *4 n.2 (quoting *Benitez* v. *Demco of Riverdale, LLC*, No. 14 Civ. 7074 (CM), 2015 WL 3780019, at *5 (S.D.N.Y. June 15, 2015)); *see also Mason* v. *Lumber Liquidators, Inc.*, No. 17 Civ. 4780 (RLM), 2019 WL 2088609, at *13 (E.D.N.Y. May 13, 2019) (stating that "courts in this Circuit have almost uniformly rejected the rationale" of *Diaz*), *aff'd*, No. 17 Civ. 4780 (MKB) (RLM), 2019 WL 3940846 (E.D.N.Y. Aug. 19, 2019).

Accordingly, the Court finds that conditional certification is appropriate here and turns next to considering the appropriate scope of the collective.

### b.   Scope of the Collective

As noted earlier, Plaintiffs seek conditional certification of a nationwide collective of Store Managers. (*See* Pl. Br. 1).  In addition to opposing conditional certification itself, Defendant argues that the Court lacks personal jurisdiction over claims brought by the Opt-In Plaintiffs and other Store Managers who did not work for Defendant in New York. (Def. Opp. 13).[6]  In the alternative, Defendant asserts that the collective must be limited to the stores where Plaintiffs worked because Plaintiffs have not submitted direct evidence that Defendant imposed the Policy in any of its other stores.  (*Id.* at 18).  The Court agrees with Defendant that it lacks personal jurisdiction over claims

---

[6]     Defendant does not challenge the Court's ability to exercise personal jurisdiction over Plaintiff or other Store Managers who worked for Defendant in New York.  (*See* Def. Opp. 13 n.5).

brought by Store Managers who worked for Defendant in states other than New York and therefore limits the conditional collective to Store Managers who worked for Defendant in New York during the relevant period.

### i.      Waiver and Forfeiture

Preliminarily, the Court addresses Plaintiffs' argument that Defendant has waived or forfeited its jurisdictional challenge by failing to include it in its answer.  (*See* Pl. Reply 9-11).[7]  "Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived."  *Corporacion Mexicana de Mantenimiento Integral, S. de R.L. de C.V.* v. *Pemex-Exploracion y Produccion*, 832 F.3d 92, 100 (2d Cir. 2016).  "Federal Rule of Civil Procedure 12(h)(1) requires a party to raise a defense of lack of personal jurisdiction either by motion or in a responsive pleading; otherwise, the defense is deemed waived."  *Roberts* v. *Bennaceur*, 658 F. App'x 611, 616 (2d Cir. 2016) (summary order) (citing Fed. R. Civ. P. 12(h)(1)).  "Similarly, a party may forfeit [a personal jurisdiction defense] by actively litigating other issues and forgoing the opportunity to litigate that right or defense."  *Id.*  "[T]o preserve the defense of lack of personal jurisdiction, a defendant need only state the defense in its first responsive filing and need not

---

[7]      Plaintiffs reference both "waiver" and "forfeiture" in their reply brief.  (*See, e.g.*, Pl. Reply 9-10).  "The term 'waiver' is best reserved for a litigant's intentional relinquishment of a known right."  *Hamilton* v. *Atlas Turner, Inc.*, 197 F.3d 58, 61 (2d Cir. 1999).  "A party may, for example, waive a defense by failing to raise it in a motion or responsive pleading."  *Roberts* v. *Bennaceur*, 658 F. App'x 611, 616 n.5 (2d Cir. 2016) (summary order) (citing Fed. R. Civ. P. 12(h)(1)).  By contrast, "[w]here a litigant's action or inaction is deemed to incur the consequence of loss of a right, or, as here, a defense, the term 'forfeiture' is more appropriate."  *Hamilton*, 197 F.3d at 61.  Thus, "even if a party has avoided waiver, that litigant may still forfeit a right or defense by forgoing subsequent opportunities to litigate that issue."  *Roberts*, 658 F. App'x at 616 n.5.

articulate the defense with any rigorous degree of specificity." *Mattel, Inc.* v. *Barbie-Club.com*, 310 F.3d 293, 307 (2d Cir. 2002).  By contrast, "[t]o waive or forfeit a personal jurisdiction defense, a defendant must give a plaintiff a reasonable expectation that it will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking." *Pemex-Exploracion y Produccion*, 832 F.3d at 102.

 While Defendant did not assert an affirmative defense based on a lack of personal jurisdiction in its answer (*see generally* Dkt. #11, Affirmative Defenses), the Court finds that several considerations weigh against waiver or forfeiture in this case.  To begin, when Defendant filed its answer on May 19, 2021, the only parties in the case were Plaintiff and Defendant.  (*See* Dkt #11). It was not until several days later, on May 26, 2021, that the first of the Opt-In Plaintiffs — Katherine McCloskey — filed a notice of consent to join the case. (*See* Dkt. #15).  Thus, at the time Defendant filed its answer, the only claims against it were asserted by Plaintiff herself, and it was not certain that Defendant would be required to defend itself against claims arising out of its alleged activities in other states.  Several district courts have declined to find waiver under comparable circumstances.  *See, e.g.*, *Kurtz* v. *RegionalCare Hosp. Partners, Inc.*, No. 4:19 Civ. 5049 (RMP), 2021 WL 6246619, at *3 (E.D. Wash. Sept. 9, 2021) (finding that defendants did not waive their personal jurisdiction defense by failing to include it in their answer because "there were no foreign plaintiffs, or opt-in putative collective members" at the time they filed the answer); *Fortney* v. *Walmart Inc.*, No. 2:19 Civ. 04209, 2020 WL 7237281, at *2

(S.D. Ohio Dec. 8, 2020) (finding that the defendant did not waive its personal jurisdiction defense by not including it in its answer because the court had not ruled on the motion for conditional certification at the time the answer was filed); *Hager* v. *Omnicare*, Inc., No. 19 Civ. 484 (FWV), 2020 WL 5806627, at *3 (S.D.W. Va. Sept. 29, 2020) (concluding that the defendant did not waive its personal jurisdiction challenge to a putative FLSA collective by failing to raise the issue in an earlier motion to dismiss because at the time of the prior motion there were no out-of-state opt-in plaintiffs in the case); *Chavira* v. *OS Rest. Servs., LLC*, No. 18 Civ. 10029 (ADB), 2019 WL 4769101, at *2 (D. Mass. Sept. 30, 2019) (finding that "the defense of personal jurisdiction was not available to Defendants[,]" and thus not waived by them, "when they filed their motion to dismiss in May 2018 because the only plaintiff asserting claims was employed in [the forum state]"); *cf. Cruson* v. *Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 251 (5th Cir. 2020) (finding that a defendant did not waive its personal jurisdiction defense as to unnamed putative class members by failing to include it in a previous motion to dismiss because "[p]rior to certification, those [putative class members] were not yet before the district court" (internal quotation marks and alterations omitted)).

Further, it is difficult to see how Defendant's answer would have given Plaintiff "a reasonable expectation that it [would] defend the suit on the merits[.]" *Pemex-Exploracion y Produccion*, 832 F.3d at 102. Defendant denied Plaintiff's allegation that the Court could exercise personal jurisdiction over her claims (Dkt. #11 at ¶ 24); denied "that the collective Plaintiff seeks to represent

18

is properly certifiable or properly defined" (*id.* at ¶ 27); asserted that "collective or class treatment would violate Defendant's rights to due process" (*id.* at ¶ 32); disclaimed "the existence" of "all individuals Plaintiff purports to represent" (*id.* at ¶ 33); and stated that it could not "fully anticipate all defenses that may be applicable to this action" and thus "reserved" its "right to assert additional defenses, if and to the extent that such defenses are applicable" (*id.* at ¶ 34). *Cf. Vallone* v. *CJS Sols. Grp., LLC*, 9 F.4th 861, 865 (8th Cir. 2021) (finding that the defendant did not waive its personal jurisdiction defense to conditional certification of a nationwide FLSA collective by stating in its answer that a nationwide collective would deny it due process and by addressing the issue "at length in its resistance to certification").

Lastly, despite Plaintiffs' protestation that Defendant waited until the filing of its opposition brief to raise the issue of personal jurisdiction (*see* Pl. Reply 11), the record demonstrates that the scope of the putative collective in this case has been a contested issue since at least the start of the mediation process. Indeed, in their August 13, 2021 letter requesting that the case be removed from mediation, Plaintiffs stated that "[t]he parties will not be able to agree on the core issue of scope of … the mediation until there is a ruling on Plaintiffs' anticipated motion for conditional certification, which will establish the scope of the case[.]" (Dkt. #19 at 2).[8] This is therefore not a case in which

---

[8]     The parties' submissions suggest disagreement as to whether Defendant agreed to mediate only Plaintiff's individual claims or Plaintiffs' collective claims. In their August 13, 2021 letter, Plaintiffs stated that "Defendant maintained that it would only mediate on behalf of the Plaintiffs." (Dkt. #19). In its November 3, 2021 letter opposing Plaintiffs' request for a page limit extension for their reply brief, however, Defendant

Defendant has allowed months, or even years, to elapse without having alerted Plaintiffs or the Court to its anticipated jurisdictional challenge. *Cf. Lumber Liquidators, Inc.*, 2019 WL 2088609, at *4 (finding waiver where "defendant failed to raise the affirmative defense of lack of personal jurisdiction in its original answer or in its two subsequent amended answers" and did not raise the defense in a motion to dismiss "despite having participated in pretrial proceedings for more than one year");[9] *Cooley* v. *Air Methods Corp.*, No. 19 Civ. 850 (PHX) (DLR), 2020 WL 9311858, at *3 (D. Ariz. Sept. 25, 2020) (finding waiver where the defendant did not raise a personal jurisdiction defense until its opposition to a motion for FLSA conditional certification despite "dispositive motion practice and over 19 months of litigating [the] case").

On this record, the Court cannot find that Defendant has waived or forfeited its personal jurisdiction challenge to the out-of-state plaintiffs' claims.

### ii.        Personal Jurisdiction

The Court now turns to the merits of Defendant's personal jurisdiction challenge, which asserts that the Court lacks the power to conditionally certify a nationwide collective under either New York's long-arm statute or the Due

---

asserted that it "*never* agreed to mediate with any opt-in plaintiffs" and that it "agreed to mediate *only as to Ms. Bethel individually*, expressly denying the existence of any other putative plaintiffs." (Dkt. #36 at 2 (emphasis in original)). While Defendant's argument against waiver or forfeiture would perhaps be more forceful if it had raised its personal jurisdiction defense at mediation, the Court does not find this disagreement to be material to its analysis of the waiver and forfeiture issues.

[9]      Notably, in affirming Magistrate Judge Roanne L. Mann's decision granting conditional certification, Judge Margo K. Brodie "decline[d] to decide whether Defendant properly raised the defense of personal jurisdiction." *Mason* v. *Lumber Liquidators, Inc.*, No. 17 Civ. 4780 (MKB) (RLM), 2019 WL 3940846, at *7 n.2 (E.D.N.Y. Aug. 19, 2019).

Process Clause as interpreted by the Supreme Court in *Bristol-Myers Squibb Co.* v. *Superior Ct. of California*, 137 S. Ct. 1773 (2017) ("*Bristol-Myers*"). (Def. Br. 13-18). In opposition, Plaintiffs contend that *Bristol-Myers* is inapplicable in the federal collective action context and thus does not pose a barrier to conditional certification of a nationwide FLSA collective. (*See* Pl. Reply 11-18). The Court disagrees with Plaintiffs on this point.

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG* v. *Bauman*, 571 U.S. 117, 125 (2014). "This is because a federal district court's authority to assert personal jurisdiction in most cases is linked to service of process on a defendant 'who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located.'" *Walden* v. *Fiore*, 571 U.S. 277, 283 (2014) (quoting Fed. R. Civ. P. 4(k)(1)(A)). Thus, "[i]n a federal question case where a defendant resides outside the forum state, a federal court applies the forum state's personal jurisdiction rules if the federal statute does not specifically provide for national service of process." *PDK Labs, Inc.* v. *Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997) (internal quotation marks omitted); *see also Marvel Characters, Inc.* v. *Kirby*, 726 F.3d 119, 128 (2d Cir. 2013) (same).

Here, because the "FLSA does not provide for nationwide service of process[,]" *Pettenato* v. *Beacon Health Options, Inc.*, 425 F. Supp. 3d 264, 273 (S.D.N.Y. 2019), the Court "look[s] to New York State law" to determine whether it permits the exercise of personal jurisdiction, *Kirby*, 726 F.3d at 128. "If the [New York] long-arm statute permits personal jurisdiction, [the court] analyze[s]

21

whether personal jurisdiction comports with due process protections established under the Constitution." *Eades* v. *Kennedy, PC L. Offs.*, 799 F.3d 161, 168 (2d Cir. 2015). "To assess whether the exercise of personal jurisdiction comports with due process, the court must ordinarily determine whether the defendant has minimum contacts with the forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Esso Expl. & Prod. Nigeria Ltd.* v. *Nigerian Nat'l Petroleum Corp.*, 40 F.4th 56, 69 (2d Cir. 2022) (quoting *Frontera Res. Azerbaijan Corp.* v. *State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 396 (2d Cir. 2009)).[10]

---

[10]     The Court pauses here to note the significance of the First Circuit's decision in *Waters* v. *Day & Zimmermann NPS, Inc.*, 23 F.4th 84 (1st Cir. 2022). There, the First Circuit found that while "Rule 4(k)(1)(A) does make the due process standard of the Fourteenth Amendment applicable to federal-question claims in federal court when a plaintiff relies on a state long-arm statute for service of the summons[,]" "this is not the same thing as saying that Rule 4 or the Fourteenth Amendment governs district court jurisdiction in federal question cases after a summons has been properly served[.]" *Id.* at 94. To the contrary, the First Circuit observed, "[i]t would be anomalous to apply the Fourteenth Amendment, rather than the Fifth Amendment, to federal causes of action after a summons is properly served." *Id.*

As Judge David J. Barron noted in his dissent in *Waters*, "[t]he majority's reading of Rule 4(k)(1)(A) ... directly conflicts, as the majority itself acknowledges, with that of other circuits" and with "the common (if, perhaps unreflective) practice of federal courts[.]" *Id.* at 102-03 (Barron, J., dissenting). Indeed, the Court is not aware of any Second Circuit authority supporting the First Circuit's reading of Rule 4(k)(1)(A). Instead, as Judge Barron noted, the "common ... practice" of federal courts in this Circuit appears to be "to apply Fourteenth Amendment-based (rather than Fifth Amendment-based) due process limits on personal jurisdiction throughout a suit's duration, and so even as to later-added claims and plaintiffs." *Id.*; *see also, e.g., Eades* v. *Kennedy, PC L. Offs.*, 799 F.3d 161, 168-69 (2d Cir. 2015) (evaluating whether personal jurisdiction could be exercised over claims brought under the federal Fair Debt Collection Practices Act with reference to principles derived from the Fourteenth Amendment); *Williams* v. *Equitable Acceptance Corp.*, No. 18 Civ. 7537 (NRB), 2021 WL 135625, at *10 (S.D.N.Y. Jan. 14, 2021) (same with respect to federal civil RICO claims).

Given that neither party has raised or addressed the issues identified in *Waters* in their briefing, and given the relative lack of caselaw supporting the First Circuit's reading of Rule 4(k)(1)(A), the Court declines to adopt the decision's holding in this case.

The parties' briefing in this case sidesteps New York's long-arm statute, focusing instead on whether the exercise of personal jurisdiction over the out-of-state Store Managers would comport with due process. (*See* Def. Opp. 13-18; Pl. Reply 11-18). Given the parties' single-minded focus on the issue, the Court proceeds directly to addressing the significance of *Bristol-Myers*.

In *Bristol-Myers*, the Supreme Court considered whether due process permitted a California state court to exercise specific personal jurisdiction over claims brought by out-of-state plaintiffs against an out-of-state defendant as part of a mass tort action. *See Bristol-Myers*, 137 S. Ct. at 1777-79. The Court began its analysis by observing that "[i]n order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *Id.* at 1781 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "When there is no such connection," the Court explained, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* Applying these principles, the Court found that California could not exercise specific personal jurisdiction over claims asserted by non-residents who did "not claim to have suffered harm in that State." *Id.* at 1782. The Court concluded by observing that its decision would "not prevent the California and out-of-state plaintiffs from joining together in a consolidated action in the States that have general jurisdiction over [the defendant]" and that residents of particular states could "probably sue together in their home States." *Id.* at 1783. Lastly, the

Court noted that its decision concerned only "the due process limits on the exercise of specific jurisdiction by a State" and left open "the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Id.* at 1783-84.

Following *Bristol-Myers*, the federal courts "have disagreed on the decision's applicability to FLSA claims." *Perez Perez* v. *Escobar Constr., Inc.*, 540 F. Supp. 3d 395, 408 (S.D.N.Y. 2021) (citing *Pettenato*, 425 F. Supp. 3d at 275 (collecting cases)); *see also* Adam Drake, *The FLSA's* Bristol-Myers Squibb *Problem*, 89 FORDHAM L. REV. 1511, 1513 (2021) (observing that "unresolved is *Bristol-Myers Squibb*'s applicability in federal courts for causes of action arising under federal law"). Presently, of the three circuits that have addressed the issue, two have found that *Bristol-Myers* precludes certification of a nationwide FLSA collective, and one has found that it does not. *Compare Waters* v. *Day & Zimmermann NPS, Inc.*, 23 F.4th 84, 97 (1st Cir. 2022) (finding that *Bristol-Myers* does not preclude certification of nationwide FLSA collective), *with Canaday* v. *Anthem Cos.*, 9 F.4th 392, 397 (6th Cir. 2021) (reaching the opposite conclusion), *and Vallone*, 9 F.4th at 861 (same). Further, while the Second Circuit has not addressed the decision's application to FLSA collective actions, the district courts in the Circuit are similarly divided. *Compare Perez Perez*, 540 F. Supp. 3d at 408 (holding that "where defendants are not subject to general jurisdiction in the forum state, the Due Process clause does not permit a collective action that includes employees who did not work in the forum state"), *and Pettenato*, 425 F. Supp. 3d at 278 (concluding that neither

due process nor New York's long-arm statute permitted the court to exercise specific personal jurisdiction over out-of-state employees' claims), *with Meo*, 2019 WL 5157024, at \*12 (rejecting a personal jurisdiction challenge centered on *Bristol-Myers* on the grounds that "Congress intended for nationwide FLSA collective actions"), *and Lumber Liquidators, Inc.*, 2019 WL 2088609, at \*6 (declining to apply the reasoning of *Bristol-Myers* to a motion for conditional certification because "the collective action allegations here arise under a federal statute intended to address wage-and-hour practices nationwide").[11]

After reviewing the parties' submissions and the decisions discussed above, the Court concludes that due process precludes it from exercising specific personal jurisdiction over claims brought by opt-in plaintiffs who worked as Store Managers in states other than New York. There is no dispute that the Opt-In Plaintiffs and other potential out-of-state plaintiffs did not "suffer[ ] harm" in New York, *Bristol-Myers*, 137 S. Ct. at 1782, and thus there is no "affiliation between the forum and the underlying controversy," such as "an activity or an occurrence that takes place in the forum State." *Id.* at 1781.

---

[11]    Plaintiffs assert repeatedly in their brief that Defendant's position is at odds with the decisions of an "overwhelming majority of courts." (Pl. Reply 11; *see also, e.g., id.* at 12 (urging the Court "to follow [the] overwhelming authority and reject [*Bristol-Myers*] as applicable in this FLSA collective action]")). The basis for this assertion appears to be *Iannotti* v. *Wood Grp. Mustang*, No. 20 Civ. 958 (DWD), 2021 WL 2805812, at \*4 (S.D. Ill. July 6, 2021), in which the court observed that "[t]he majority of district courts have concluded — either at the motion to dismiss stage or on a motion for conditional certification — that [*Bristol-Myers*] does not apply to FLSA collective actions." *Iannotti*, in turn, sources the assertion to another district court decision, which itself cites to still more decisions making a similar observation. None of these decisions, however, identifies the number of decisions on either side of the ledger or identifies an empirical basis for claiming such a consensus.

"When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.*

Plaintiffs do not seriously dispute that the principles set forth in *Bristol-Myers*, if applied here, would preclude the exercise of jurisdiction over the non-resident plaintiffs' claims. Instead, drawing on the decisions that have found *Bristol-Myers* inapplicable in this context, Plaintiffs seek to distinguish the decision from the present case on three bases. *First*, Plaintiffs point to the differences between the mass tort action addressed in *Bristol-Myers* and the collective action here. (*See* Pl. Reply 12). *Second*, Plaintiffs argue that "FLSA collective actions are federal statutory actions which Congress intended as remedial such that they should reach the broadest scope possible." (*Id.*). And *third*, Plaintiffs assert that "the federalism concerns central to the [*Bristol-Myers*] decision are absent in FLSA collective actions." (*Id.*). The Court addresses each of these purported distinctions in turn.

The Court begins with Plaintiffs' proffered distinction between mass actions of the kind addressed in *Bristol-Myers* and the FLSA collective action presented here. In Plaintiffs' view, mass actions are "essentially a consolidation of multiple individual actions," whereas collective actions "involve[] one action with many potential plaintiffs[.]" (Pl. Reply 12). Plaintiffs rely on *Molock* v. *Whole Foods Mkt., Inc.*, 297 F. Supp. 3d 114, 126 (D.D.C. 2018), *aff'd on other grounds sub nom. Molock* v. *Whole Foods Mkt. Grp., Inc.*, 952 F.3d 293 (D.C. Cir. 2020), to support this point. (*See* Pl. Reply 13). But *Molock* addressed the application of *Bristol-Myers* to class actions brought under Rule 23 of the

Federal Rules of Civil Procedure, not collective actions brought under the FLSA. *See id.* at *126. Indeed, the court rested its finding that *Bristol-Myers* did not preclude its exercise of personal jurisdiction over out-of-state class members on certain "material distinctions between a class action and a mass tort action." *Id.* One such distinction, the court explained, is that "in a mass tort action, each plaintiff is a real party in interest to the complaints; by contrast, in a putative class action, one or more plaintiffs seek to represent the rest of the similarly situated plaintiffs, and the 'named plaintiffs' are the only plaintiffs actually named in the complaint." *Id.* (internal quotation marks omitted).

The distinctions drawn in *Molock* and identified in Plaintiffs' briefing are inapplicable in the FLSA collective action context. As Magistrate Judge Barbara Moses explained in a thoughtful and comprehensive decision addressing the identical issues presented here, "an FLSA collective action is more comparable to the mass tort action in *Bristol-Myers* than to a Rule 23 class action." *Pettenato*, 425 F. Supp. 3d at 279. Most critically, in FLSA collective actions, opt-in plaintiffs are deemed to be "parties to the action as soon as they file consent forms." *Waters*, 23 F.4th at 90 (collecting cases); *see also Zambrano* v. *Strategic Delivery Sols., LLC*, No. 15 Civ. 8410 (ER), 2021 WL 4460632, at *8 (S.D.N.Y. Sept. 28, 2021) (observing that "[c]ourts in this Circuit recognize that FLSA collective actions differ from Rule 23 actions in that each FLSA plaintiff has party status and may pursue their own individual claim"); *Canaday*, 9 F.4th at 394 (explaining that "[o]nce they file a written consent, opt-in plaintiffs enjoy party status as if they had initiated the action").

27

Several consequences flow from this distinction, including, for example, that "opt-in plaintiffs are subject to party discovery, while Rule 23 class members are generally not." *Pettenato*, 425 F. Supp. 3d at 279 (citing *Ruiz* v. *Citibank, N.A.*, Nos. 10 Civ. 5950 (KPF)(RLE), 10 Civ. 7304 (KPF)(RLE), 2014 WL 4635575, at *4 (S.D.N.Y. Aug. 19, 2014), and *Stinson* v. *City of New York*, 2015 WL 8675360, at *1 (S.D.N.Y. Dec. 11, 2015)).  Thus, while Plaintiffs assert that in an FLSA collective action "there is but one 'suit': the overtime action between the named Plaintiff and Defendant" (Pl. Reply 14), these distinctions make it such that "[a] collective action is more accurately described as a kind of mass action, in which aggrieved workers act as a collective of *individual* plaintiffs with *individual* cases — capitalizing on efficiencies of scale, but without necessarily permitting a specific, named representative to control the litigation, except as the workers may separately so agree." *Campbell* v. *City of Los Angeles*, 903 F.3d 1090, 1105 (9th Cir. 2018) (emphasis in original).  Because Plaintiffs have not, and indeed cannot, demonstrate a connection between the claims brought by the individual Store Managers who worked outside of New York and New York itself, "[i]t follows that the [New York] courts cannot claim specific jurisdiction" over these claims.  *Bristol-Myers*, 137 S. Ct at 1782; *see also Pettenato*, 425 F. Supp. 3d at 279 (finding that the court could not exercise personal jurisdiction where "there [was] a lack of connection between the forum and the underlying controversy").

Next, the Court considers Plaintiffs' argument that *Bristol-Myers* is inapplicable here because of the "nature of the FLSA as a remedial statute[.]"

28

(Pl. Reply 15).  Plaintiffs argue that "[u]nlike the state law claims brought in state court in [*Bristol-Myers*], Plaintiff[s'] FLSA claims are asserted in federal court and arise from a 'federal statute designed to address employment practices nationwide.'" (*Id.* (quoting *Seiffert* v. *Qwest Corp.*, No. 18 Civ. 70 (GF) (BMM), 2018 WL 6590836, at *2 (D. Mont. Dec. 14, 2018)).  To be sure, FLSA is a broad remedial statute.  But the Court's ability to exercise personal jurisdiction does not depend on the purposes of a particular statute, but rather on well-settled principles of due process.  Indeed, a court may not exercise jurisdiction in a manner repugnant to the Constitution.  Further, as the Supreme Court noted in *Bristol-Myers* and several courts have observed in the FLSA collective action context, Plaintiffs are not precluded from bringing a nationwide collective action against Defendant.  *See Bristol-Myers*, 137 S. Ct. at 1783; *see also Pettenato*, 425 F. Supp. 3d at 280.  Indeed, Plaintiffs could file such an action in the districts in which Defendant is subject to general jurisdiction (*i.e.*, the District of Delaware or the Southern District of Florida). Moreover, Congress could enable such actions by amending the FLSA to provide for nationwide service of process and thereby ensuring that any limitation on the exercise of personal jurisdiction in such a case "would arise from the Fifth Amendment's Due Process Clause and its requirements of minimum contacts with the United States, not the Fourteenth Amendment's Due Process Clause and its requirement of minimum contacts with the host State." *Canaday*, 9 F.4th at 398.  Because Congress has yet to make such an amendment to the FLSA, and because Defendant is not subject to general

29

jurisdiction in New York, the Court cannot exercise personal jurisdiction over the out-of-state opt-in plaintiffs.

Lastly, the Court addresses Plaintiffs' argument that *Bristol-Myers* does not preclude the exercise of personal jurisdiction here because "the federalism concerns at the heart of the [*Bristol-Myers*] decision are absent in this FLSA litigation." (Pl. Reply 17 (capitalization omitted)).  Quoting an out-of-circuit district court decision, Plaintiffs point to the fact that "[w]hen a federal court adjudicates a federal question claim, it exercises the sovereign power of the United States and no federalism problem is presented." (Pl. Reply 18 (quoting *O'Quinn* v. *TransCanada USA Servs., Inc.*, 469 F. Supp. 3d 591, 614 (S.D.W. Va. 2020)).  But as noted at the start of this section, "[a] federal court applies the forum state's personal jurisdiction rules unless a federal statute 'specifically provides[s] for national service of process." *AmTrust Fin. Servs., Inc.* v. *Lacchini*, 260 F. Supp. 3d 316, 327 (S.D.N.Y. 2017) (quoting *Friedlander*, 103 F.3d at 1108).  Here, because the FLSA does not provide for nationwide service of process, the Court's jurisdiction in this case "is limited by the Fourteenth Amendment's Due Process Clause." *Perez Perez*, 540 F. Supp. 3d at 407.  And under that provision of law, the "lack of connection 'between the forum and the underlying controversy'" is sufficient to preclude the Court's exercise of personal jurisdiction here, irrespective of the presence or absence of the federalism concerns discussed in *Bristol-Myers*.  *See Pettenato*, 425 F. Supp. 3d at 279 (quoting *Bristol-Myers*, 137 S. Ct. at 1781).

Based on the foregoing analysis, the Court finds that it cannot exercise specific personal jurisdiction over the claims of out-of-state Store Managers, and therefore declines to conditionally certify a nationwide collective. The Court instead will limit the scope of the conditional collective to Store Managers who worked for Defendant in its New York retail locations.

### 2.    The Court Will Order Pre-Certification Discovery

Having found that conditional certification of a New York-based collective is appropriate, the Court now addresses to the remainder of Plaintiffs' motion. Plaintiffs move first for an order compelling Defendant to produce "the names, titles, compensation rates, dates of employment, last known mailing addresses, last known email addresses, and all known telephone numbers of all employees within the putative class within 14 days of the date of this Order." (Pl. Br. 11).[12] While Defendant opposes Plaintiffs' request for the putative opt-in members' personal email addresses due to the private nature of such information (Def. Opp. 21), the Court perceives no reason this request should

---

[12]    Plaintiffs state that if the notices ultimately approved by the Court are returned as undeliverable, then they "will seek the right to discover such [Store Managers'] social security numbers so that the [Claims] Administrator sending the Notice can research a better address and remail the notice." (Pl. Br. 12; *see also* Pl. Reply 9 n.9 (reiterating that "Plaintiffs only seek social security numbers in the event that the notice comes back as undeliverable")). Defendant objects to this contemplated request. (Def. Opp. 21). Given that Plaintiffs have not actually shown a current need for discovery into the social security numbers of putative class members, the Court declines Plaintiffs' request to order disclosure of such numbers at this time *See Zaldivar* v. *JMJ Caterers, Inc.*, 166 F. Supp. 3d 310, 326 (E.D.N.Y. 2016) (explaining that "[c]ourts are, however, reluctant to authorize disclosure of private information, such as dates of birth and social security numbers, in the first instance and without a showing that the information is necessary for the plaintiff to notify potential opt-ins of the collective action"). "If Plaintiffs find that a large number of notices are returned as undeliverable, Plaintiffs may raise the issue for the Court to reconsider at that time." *Imbarrato* v. *Banta Mgmt. Servs., Inc.*, No. 18 Civ. 5422 (NSR), 2022 WL 1210868, at *7 (S.D.N.Y. Apr. 25, 2022).

not be granted.  Indeed, "in furtherance of the general purposes of FLSA,

'[c]ourts in this District commonly grant requests for the production of names,

mailing addresses, email addresses, telephone numbers, and dates of

employment in connection with the conditional certification of a FLSA collective

action.'" *Truffa Pizzeria & Wine Room Corp.*, 2021 WL 568249, at *6 (quoting

*Benavides* v. *Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 488 (S.D.N.Y. 2016));

*see also Gillett* v. *Zara USA, Inc.*, No. 20 Civ. 3734 (KPF), 2021 WL 1731836, at

*10 (S.D.N.Y. May 3, 2021) (ordering the disclosure of similar information);

*Zaldivar* v. *JMJ Caterers, Inc.*, 166 F. Supp. 3d 310, 326 (E.D.N.Y. 2016)

(same).  Accordingly, Plaintiffs' request for this information is granted.

### 3.    The Court Generally Approves the Proposed Notice and Consent to Join Form

The Court now turns to the scope and substance of the notice that will

provided to putative members of the conditional collective.  Plaintiffs have

submitted proposed notice and reminder notice forms meant to inform

potential collective action members of the existence of this action and their

ability to opt-in to the collective.  (*See* Jones Decl., Ex. G (copies of the

notices)).  Defendant raises several objections to the notices, which objections

are addressed in the following subsections.  Ultimately, the Court will approve

the notice and reminder notice with certain modifications described below.[13]

---

[13]    Plaintiffs have also submitted a proposed consent to join form.  (*See* Jones Decl., Ex. G).
Defendant raises no objection to the contents of this form, and the Court's own review
of the form satisfies it that the form is appropriate.  Accordingly, the Court grants
Plaintiffs' motion to distribute the form.

### a.   The Temporal Scope of the Notice and Opt-In Period

Preliminarily, the Court considers several threshold issues related to the temporal scope of the notice and opt-in period.  The parties dispute (i) the applicable statute of limitations; (ii) the date from which notice should be measured; (iii) whether equitable tolling is appropriate; and (iv) the length of the opt-in period.  The Court addresses each of these disputes in turn.

The Court begins with the parties' dispute over the applicable statute of limitations.  "Under the FLSA, plaintiffs are generally afforded two years to file a claim from the time the cause of action accrued unless the violation is 'willful,' in which case plaintiffs are afforded three years."  *Cheng Xia Wang* v. *Shun Lee Palace Rest., Inc.*, No. 17 Civ. 840 (VSB), 2018 WL 3155835, at *5 (S.D.N.Y. June 28, 2018) (citing 29 U.S.C. § 255(a)).  Where, as here, the parties dispute whether the alleged FLSA violations were willful (*see* Compl. ¶ 41; Def. Opp. 19-20), "the appropriate statute of limitations is three years[,]" *Yuefeng Shi* v. *TL & CG Inc.*, No. 19 Civ. 8502 (SN), 2020 WL 4586359, at *6 (S.D.N.Y. Aug. 10, 2020) (citing, *inter alia, Hamadou* v. *Hess Corp.*, 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013)); *see also Cheng Xia Wang*, 2018 WL 3155835, at *5 (adopting the three-year limitations period for conditional certification purposes "without making a determination as to the merits of the claim at this time"); *Cohen* v. *Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317, 331 (S.D.N.Y. 2010) (collecting cites for the proposition that "[c]ourts routinely approve a three-year notice period").  Accordingly, the Court applies the FLSA's three-year statute of limitations at this stage of the case.

Next, the Court resolves the parties' dispute as to whether the three-year limitations period should be measured from the filing of the Complaint (as Plaintiffs contend) or from the date of this Opinion and Order (as Defendant asserts).  Generally, the "statute of limitations for opt-in plaintiffs' FLSA claims runs until they actually join the lawsuit; it does not relate back to the filing of the named plaintiff's complaint." *Gaspar* v. *Pers. Touch Moving, Inc.*, No. 13 Civ. 8187 (AJN), 2014 WL 4593944, at *7 (S.D.N.Y. Sept. 15, 2014).  "However, because 'equitable tolling issues often arise as to individual opt-in plaintiffs[,] … courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date.'" *Hong* v. *Haiku @ WP Inc.*, No. 19 Civ. 5018 (NSR), — F. Supp. 3d —, 2022 WL 263575, at *7 (S.D.N.Y. Jan. 28, 2022) (quoting *Gaspar*, 2014 WL 4593944, at *7).  Courts have reasoned that this approach "will increase the likelihood that more party plaintiffs with timely claims consent to opt in, with the understanding that at the appropriate stage in the litigation, Defendant[ ] will have an opportunity to argue that each plaintiff's claim is untimely because equitable tolling does not apply." *Alvarado Balderramo* v. *Taxi Tours Inc.,* No. 15 Civ. 2181 (ER), 2017 WL 2533508, at *7 (S.D.N.Y. June 9, 2017).  Consistent with this widespread approach, the Court authorizes the notice to be sent to Store Managers who worked for Defendant during the three years prior to the filing of the Complaint on March 31, 2021. (*See* Dkt. #1).

The Court now turns to the parties' related dispute as to whether the Court should toll the limitations period for potential opt-in plaintiffs' claims. Plaintiffs argue that equitable tolling is appropriate given the nearly 11 months that have elapsed since they filed their motion for conditional certification. (Dkt. #47 at 4-5). In response, Defendant asserts that Plaintiffs' request is premature because whether equitable tolling is appropriate must be resolved on an individualized basis. (Dkt. #48 at 3). The Court finds that "it is unnecessary to determine this issue now, as 'it is not yet clear whether or not any potential plaintiffs will be barred from this action due to a delay in notice.'" *Mendoza*, 2013 WL 5211839, at *10 (quoting *Whitehorn* v. *Wolfgang's Steakhouse, Inc.,* 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011)). The Court will "consider an application from any opt-in plaintiff based on an individualized showing that tolling is appropriate." *Yuefeng Shi*, 2020 WL 4586359, at *6; *see also Katz* v. *Equinox Holdings, Inc.*, No. 20 Civ. 9856 (VEC), 2022 WL 2952143, at *3 (S.D.N.Y. July 26, 2022) (adopting a similar approach).

The Court concludes its consideration of the temporal aspect of the notice by addressing the length of the opt-in period. While Plaintiffs contend that a 90-day notice period is appropriate "to ensure the FLSA Collective members have sufficient time to be made aware of this action and their opportunity to join" (Pl. Br. 14), Defendant asks that the period be limited to 60 days (Def. Opp. 25). "The standard opt-in period in this Circuit, following conditional certification, is 60 days." *Mei Rong Du* v. *Dingxiang Inc.*, No. 19 Civ. 11924 (JPO) (BCM), 2020 WL 7404984, at *11 (S.D.N.Y. Dec. 17, 2020); *see*

*also Hong*, 2022 WL 263575, at *11 ("Courts adopt a 90-day opt-in period only where the parties agree or if special circumstances require it.").  Here, Plaintiffs provide no factual basis warranting a departure from that standard practice. Accordingly, the opt-in period will be limited to 60 days.

### b.  The Contents of the Notice

The Court now turns to the contents of the notice that will be distributed to the conditional collective.  The FLSA does not specify the contents of the notice of pending litigation to be provided to potential opt-in plaintiffs.  Instead, it vests the Court with broad discretion to fashion said notice.  *See Delaney* v. *Geisha NYC, LLC*, 261 F.R.D. 55, 59 (S.D.N.Y. 2009); *Gjurovich*, 282 F. Supp. 2d at 106.  In assessing the adequacy of proposed notice, courts consider whether the notice provides "accurate and timely notice concerning the pendency of the collective action, so that [potential opt-in plaintiffs] can make informed decisions about whether to participate."  *Hoffmann-La Roche Inc.*, 493 U.S. at 170; *see also Delaney*, 261 F.R.D. at 59.  Courts in this District have held that the notice should include, at minimum, the following information:

> [T]he purpose of the notice, the nature of the lawsuit, the proposed class composition, the legal effect of joining the lawsuit, the fact that the court has not taken any position regarding the merits of the lawsuit, how to join the lawsuit, the purely voluntary nature of the decision and the legal effect of not joining the lawsuit, the prohibition against retaliation, and the relevant contact information for inquiries.

*Yuefeng Shi*, 2020 WL 4586359, at *4 (quoting *Hernandez* v. *City of New York*, No. 16 Civ. 3445 (RA), 2017 WL 2829816, at *7 (S.D.N.Y. June 29, 2017)).

Plaintiffs request that the Court approve their proposed notice, which contains much of the information described above, as well as a reminder notice to be distributed halfway through the notice period.  (*See* Pl. Br. 12-13, 15; Jones Decl., Ex. G (proposed notice and reminder notice)).  Defendant seeks several modifications to the notice, and opposes communicating the notice to prospective collective members by anything other than a single mailing (*i.e.*, Defendant opposes both an emailed copy of the notice and the proposed reminder notice).  (*See* Def. Opp. 20-25).  The Court finds Plaintiffs' notice to be adequate, subject to several minor modifications.

*First*, the notice must be amended to include both (i) Defendant's proposed language describing its defenses in this action and (ii) the fact that the potential opt-in plaintiffs are "not required to accept plaintiffs' counsel as their own.'"  *Martin* v. *Sprint/United Mgmt. Co.*, No. 15 Civ. 5237 (PAE), 2016 WL 30334, at *18 (S.D.N.Y. Jan. 4, 2016) (observing that "[c]ourts frequently approve" such language).  Plaintiffs have already agreed to make these modifications (*see* Pl. Reply 8 n.8), and the Court finds them to be appropriate.

*Second*, the notice must be supplemented to include defense counsel's contact information.  *See Norris* v. *ProCORE LLC*, No. 21 Civ. 7014 (BMC), 2022 WL 1205143, at *6 (E.D.N.Y. Apr. 22, 2022) (stating that "[i]nclusion of a defendant's identity and contact information is common in this District"); *Gillett*, 2021 WL 1731836, at *8 ("Courts in this Circuit have generally concluded that such [contact] information is appropriate for inclusion in a

notice of collective action" (quoting *Slamna* v. *API Rest. Corp.*, No. 12 Civ. 757 (RWS), 2013 WL 3340290, at *5 (S.D.N.Y. July 2, 2013)).

*Third*, the notice shall be amended to include a more robust description of the putative opt-in plaintiffs' potential discovery obligations.  Specifically, the notice shall include the following language: "If you join this lawsuit, you may be asked to give testimony and information about your work for [BlueMercury], to help the Court decide whether you are owed any money."  *Hernandez*, 2017 WL 2829816, at *8 (quoting *Dilonez* v. *Fox Linen Serv. Inc.*, 35 F. Supp. 3d 247, 255 (E.D.N.Y. 2014)) (observing that this language "has been widely accepted by courts in this Circuit").  The Court denies Defendant's request to include additional language related to the potential opt-in plaintiffs' "discovery and potential trial related obligations" or their potential obligation to pay Defendant's costs in the event their action does not prevail.  (*See* Def. Opp. 22-23).  "Although some courts have permitted such language, others have found language about potential costs to be inappropriate given the remote possibility that such costs for absent class members would be other than *de minimis*, and the risk of an *in terrorem* effect that is disproportionate to the actual likelihood that costs will occur in any significant degree."  *Martin*, 2016 WL 30334, at *18 n.37 (internal citations, quotation marks, and alterations omitted).

Separately, the Court will permit Plaintiffs to distribute their proposed reminder notice halfway through the 60-day opt-in period "in accordance with the reasoning of other courts in this District."  *Gillett*, 2021 WL 1731836, at *9 (collecting cases); *see also, e.g.*, *Richards* v. *Empire Scaffolding Sys., Inc.*, No. 21

Civ. 6638, No. 21 Civ. 6638 (VEC), 2022 WL 2384154, at *3 (S.D.N.Y. July 1, 2022) (authorizing a reminder notice halfway through the opt-in period).

### c.     The Form and Method of Distribution

Lastly, Plaintiffs request that the notice and reminder notice authorized above be (i) sent via U.S. mail and email and (ii) be posted at Defendant's storefronts in an area where required legal notices are posted.  (Pl. Br. 14-15). The Court grants both of Plaintiffs' requests, which are standard practice in this Circuit.  *See Gillett*, 2021 WL 1731836, at *9 n.8 (authorizing notice by mail, e-mail, and text message and ordering the notice to be posted in the defendant's stores in areas not accessible to the public).

### CONCLUSION

For the foregoing reasons, Plaintiffs' motion for conditional collective certification is GRANTED, but solely as to Store Managers who worked for Defendant in retail stores located in New York during the relevant period.

Defendant is ORDERED to provide Plaintiff, in a computer-readable format, with the names, titles, compensation rates, dates of employment, last known mailing addresses, last known email addresses, and all known telephone numbers for all employees within the putative collective within 14 days of the date of this Order and Opinion.

The parties are ORDERED to meet and confer regarding the appropriate next steps as to the claims brought by the Opt-In Plaintiffs in light of the Court's jurisdictional analysis.  The parties shall file a joint letter stating their

respective positions as to the appropriate next steps as to these claims on or before **September 6, 2022**.

The Clerk of Court is directed to terminate the motion at docket entries 27, 28, and 46.

SO ORDERED.

Dated:      August 22, 2022
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge