**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

| | | |
|---|---|---|
| LESLIE BETHEL, on her behalf of herself and all others similarly situated, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No: 1:21-cv-02743 |
| v. | : | |
| | : | |
| BLUEMERCURY, INC., a Delaware corporation, | : | |
| | : | |
| Defendant. | : | |

-------------------------------------------------------X

## PLAINTIFFS' *UNOPPOSED* MOTION FOR APPROVAL OF CLASS <u>AND COLLECTIVE ACTION SETTLEMENT</u>

## TABLE OF CONTENTS

I.    STATEMENT OF FACTS…………...…………………………...………………………… 1

      A.  The Settlement Terms…………………………………………………………….. 3

      B.  Plaintiffs' Counsel is Well Qualified ………………….…………………………… 5

II.   MEMORANDUM OF LAW …………………………………………….……………...10

      A.  The Settlement Agreement Represents a Fair and Reasonable Resolution of the
          Parties' Disputes………………………………………………….……………11

          1.  The Parties Engaged in Extensive Discovery Before Settlement………….. 11

          2.  Settling Now Would Allow the Parties to Avoid the Additional Expenses
              Related to Discovery, Further Motion Practice, and Trial…..…………….....12

          3.  There Has Been No Fraud or Collusion……………………….…..………...…12

          4.  Plaintiffs' Counsel is Well Qualified and Experienced………..………....…13

          5.  The Settlement Amount is Fair Given the Risks of Litigation and Projected
              Recovery………..……………………………………………..……...14

          6.  The Reaction of the Class Has Been Positive……...…………….………15

          7.  Establishing a Class and Maintaining It Through Trial Would Not Be
              Simple…………..……………………………………………….……...14

      B.  The Requested Payments for Attorneys' Fees and Expenses are
          Reasonable……...………………………………………………..……...16

      C.  The Requested Enhancement Award is Reasonable...……………….…………15

      D.  The Settlement Class Meets the Legal Standard for Class Certification ……….18

          1.  Numerosity………………………………………………..……...18

          2.  Commonality..…………………………………………..………19

          3.  Typicality……………………….……....………….……….20

          4.  Adequacy of the Named Plaintiff…..………………….…..…….20

          5.  Common Questions Predominate…..………………….…..…….21

6.  Class Action is a Superior Mechanism……..………………..………..22

III.    CONCLUSION…..………………………………………………………...… 23

4881-1107-4949, v. 1

## **TABLE OF AUTHORITIES**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................. 21, 23

*Anderson v. Sara Lee Corp., No. 4:03-cv-00031-H*,
    2013 WL 12250391 (E.D.N.C. May 16, 2013) ....................................... 14

*Bozak v. FedEx Ground Package Sys., Inc.*,
    No. 3:11-cv-00738-RNC, 2014 WL 3778211, at \*6 (D. Conn. July 31, 2014) .................... 17

*Campos v. Goode, No. 10 Civ. 224*,
    2010 WL 5508100 (S.D.N.Y. Nov. 29, 2010) ....................................... 21

*Clark v. Ecolab, Inc.*,
    2009 WL 6615729 (S.D.N.Y. 2009) .................................................... 20, 22

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995) ................................................................. 18

*Day v. NuCO2 Mgmt., LLC*,
    No. 1:18- cv-02088, 2018 WL 2473472, at \*1 (N.D. Ill. May 18, 2018) ................. 12-13, 17

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006) ................................................................. 18

*Devine v. City of Hampton, Virginia*,
    No. 4:14-cv-81, 2015 WL 10793424 (E.D. Va. Dec. 1, 2015) ........................................ 12, 13

*Devlin v. Ferrandino & Son, Inc.*,
    No. 15-cv-4976, 2016 WL 7178338, at \*9 (E.D. Pa. Dec. 9, 2016) ...................... 17

*Diaz v. E. Locating Serv., Inc.*,
    No. 10 Civ. 4082, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010) ..................................... 21, 23

*In re Dollar Gen. Stores FLSA Litig.*,
    No. 5:09-MD-1500, 2011 WL 3904609 (E.D.N.C. Aug. 23, 2011) ................... 10, 11, 12, 13

*Dziennik v. Sealift, Inc.*,
    2 No. 05 Civ. 4659, 007 WL 1580080 (E.D.N.Y. May 29, 2007) ......................................... 21

*Faile v. Lancaster County*,
    10-cv-02809-CMC, 2012 U.S. Dist. LEXIS 189610 (D.S.C. Mar. 8, 2012) ........................ 10

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005) ................................................................. *passim*

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) ................................................................. 19

*Graudins v. Kop Kilt*, LLC,
No. 14-cv-2589, 2017 WL 736684, at *11 (E.D. Pa. Feb. 24, 2017)......................................17

*Green v. Wolf Corp.*,
406 F.2d 291 (2d Cir. 1968) .................................................................................................22

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ..............................................................................................23

*In re Initial Pub. Offering Sec. Litig.*,
471 F.3d 24 (2d Cir. 2006) ...................................................................................................22

*Kamean v. Local 363, Int'l Bhd. of Teamsters*,
109 F.R.D. 391 (S.D.N.Y. 1986) ..........................................................................................19

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) ...................................................................................14

*Marisol A. v. Giuliani*,
126 F.3d 372, 377 (2d Cir. 1997)),.......................................................................................20

*McBean v. City of N.Y.*,
228 F.R.D. 487 (S.D.N.Y. 2005) ..........................................................................................22

*McMahonv. Olivier Cheng Catering & Events, LLC*,
No. 08 Civ. 8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ...........................................21

*Osman v. Grube, Inc.*,
No. 3:16-cv-00802-JJH, 2018 WL 2095172, at *2 (N.D. Ohio May 4, 2018) ......................17

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
237 F.R.D. 26 (E.D.N.Y. 2006) ...........................................................................................18

*Rehberg v. Flowers Baking Co. of Jamestown, LLC*,
2015 WL 1346125 (W.D.N.C. Mar. 24, 2015) .....................................................................19

*In re Rent-Way Sec. Litig.*,
305 F. Supp. 2d 491 (W.D. Pa. Dec. 22, 2003) ....................................................................13

*Rivera v. Dixson, No. TDC-14-cv-2901*,
2015 WL 427031 (D. Md. Jan. 30, 2015) .............................................................................11

*RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*,
No. 94 Civ. 5587. 2003 WL 21136726 (S.D.N.Y. May 15, 2003) ...................................14-15

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993) .................................................................................................20

*Rossini v. Ogilvy & Mather, Inc.*,
798 F.2d 590 (2d Cir. 1986) .................................................................................................21

v

*Smith v. Krispy Kreme Doughnut Corp.,*
  No. 1:05-cv-00187, 2007 WL 119157 (M.D.N.C. Jan. 10, 2007) ................................... 16, 17

*Taylor v. Progress Energy, Inc.,*
  415 F.3d 363 (4th Cir. 2005) ............................................................................................... 10

*Thompson v. Qwest Corp,*
  No. 17-cv-1745-WJM-KMT, 2018 WL 2183988, at *3 (D. Colo. May 11, 2018) ............... 17

*Torres v. Gristede's Corp.,*
  No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006) ......................................... 22

*Toure v. Cent. Parking Sys. of N.Y.,*
  No. 05 Civ. 5237, 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) ......................................... 21

*deMunecas v. Bold Food, LLC,*
  No. 09 Civ. 440, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ........................................... 21

*Villegas v. J.P. Morgan Chase & Co.,*
  No. 09-cv-00261 SBA EMC, 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ...................... 13

*In re Visa Check/MasterMoney Antitrust Litig.,*
  280 F.3d 124 (2d Cir. 2001) .......................................................................................... 22, 23

## Statutes

29 U.S.C. §216 ........................................................................................................................ 1

N.Y. Lab. Law Art. 6 §190 et seq. ...................................................................................... 1, 5

N.Y. Lab. Law § 195 et. seq ................................................................................................... 5

N.Y. Lab. Law §§ 650 et seq ................................................................................................... 1

## Rules

Federal Rule of Civil Procedure 23 ............................................................................. *passim*

12 N.Y.C.R.R. § 141 ............................................................................................................... 5

## Other

4881-1107-4949, v. 1

Plaintiff LESLIE BETHEL ("Bethel"), individually and on behalf of all others similarly situated, by and through her undersigned attorneys, respectfully submits this Memorandum of Law in Support of Plaintiffs' *Unopposed* Motion for Approval of Class and Collective Action Settlement.

## I.    STATEMENT OF FACTS

Plaintiff Bethel worked as a non-exempt, hourly-paid Store Manager ("SM") for Defendant, Bluemercury, Inc. ("Defendant"), from March 2018 to March 2019 at three (3) of Defendant's retail store locations in New York. Jones Decl. at ¶ 3.  In her Complaint filed on March 31, 2021, Plaintiff alleged, on behalf of herself and similarly situated Store Managers ("SMs"), that Defendant had a uniform, common and widespread policy pursuant to which SMs nationwide worked overtime hours off-the-clock without compensation, in violation of the Fair Labor Standards Act, 29 U.S.C. §216(b) ("FLSA"). *Id*.; Dkt. #1.  Bethel also asserted a claim for unpaid overtime on behalf of herself and similarly situated non-exempt, hourly SMs who worked for Defendant in New York pursuant to Federal Rule of Civil Procedure 23 to remedy violations of the New York Labor Law ("NYLL"), Article 6, §§ 190 *et seq*., Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor regulations, 12 N.Y.C.R.R. Part 142 *et seq*. (collectively, the "New York Wage Laws").  Jones Decl. at ¶ 3.

While Bluemercury asserts that all employees are paid for all hours worked and that it provides employees with sufficient time to take breaks, in her Complaint Bethel alleged that she regularly worked off the clock, and did not receive compensation from Defendant for that time worked at BlueMercury: (a) established tight labor budgets for the stores, which did not allow her and other SMs sufficient time to perform their duties each day, forcing them to work off the clock before and after their shifts, and during their lunch breaks; and (b) required them to respond to

work-related phone calls and text messages from their stores and their supervisors when they are out of the store and off the clock, without compensation. *Id*. at ¶ 4. Bluemercury denies these allegations, and the Court has not ruled on the merits.

Several store managers who worked for Defendant in New York and other states joined the action prior to the filing of Plaintiff's motion for conditional certification. *Id*. at ¶ 5. Plaintiff was joined by Opt-In Plaintiff Katherine Henrikson, who worked as a SM for Defendant in Edina, Minnesota; Leyna Hanson who was employed by Defendant from October 2019 to March 2021 in Kiawah Island, South Carolina; Opt-In Plaintiff Gustavo Espinoza who was employed by Defendant as a SM from March 2017 to June 2019 in Coral Gables, Florida; Joseph Montefinese who was employed by Defendant as a SM from May 2019 to September 2020 in New York, New York; Opt-In Plaintiff Lourdes Lima who was employed by Defendant as a SM from June 2016 to October 2019 in New York, New York; Opt-In Plaintiff Ruben Bermudez who was employed by Defendant as a SM from January 2019 to November 2019 in Bethesda, Maryland; Opt-In Plaintiff Alexa Stuart who was employed by Defendant as a SM from March 2017 to August 2020 in Santa Monica, California; and Opt-In Plaintiff Albert Paris Suazo who was employed by Defendant as a SM from May 2019 to November 2019 in San Francisco, California. *Id*.   Defendant filed its Answer to the Complaint on May 19, 2021. *Id.* Dkt # 11.

The parties zealously litigated this action at every stage. On September 29, 2021, Plaintiff moved for conditional certification of a nationwide FLSA collective on behalf of Bluemercury SMs nationwide. *Id*. at ¶ 6. The parties completed briefing on the Motion on November 15, 2021. *Id*.   The Court ultimately granted conditional certification, but limited the geographic scope of the conditionally certified collective to SMs who were employed in the state of New York. Dkt. # 50; *Id*.  Consequently, Opt In Plaintiffs, Henrikson, Hanson, Bermudez, Espinoza, Suazo and Suart,

who worked for Bluemercury outside of New York – could not pursue their claims in this action. *Id*. at ¶ 6. Following the Order granting conditional certification, Notice of this Action was sent to seventy-three (73) SMs. *Id*. Ultimately, fifteen (15) individuals opted into this action as a result of conditional certification notice issuance (hereinafter the "Opt In Plaintiffs). *Id*.[1]

The parties analyzed extensive data that Defendant produced to calculate the potential damages owed to Plaintiff and the Opt In Plaintiffs, as well as the potential exposure relating to SMs employed in New York. *Id*. at ¶ 7. In addition to the damages information, Defendant also produced time punch and payroll records for all of the Opt In Plaintiffs, the personnel file of Leslie Bethel, and Defendant's timekeeping policies. *Id.* All of these documents allowed Plaintiffs' Counsel to evaluate the potential damages and risks associated with the litigation. *Id.*

The parties attended mediation on June 14, 2023 with an experienced wage-and-hour mediator, Michael Loeb. *Id*. at ¶ 8. With the mediator's assistance, the parties reached a fair and reasonable settlement on behalf of non-exempt, hourly SMs who were employed by Defendant in New York between March 31, 2015 and September 12, 2023 ("Class Members"). *Id*. The settlement appropriately balances the risks and costs of continuing to litigate against the likely benefits to Plaintiffs and the Class Members. *Id.* The settlement agreement was finalized over the next three (3) months and executed on October 9, 2023. *Id.*

With this motion, Plaintiff requests the Court's approval of the parties' Settlement Agreement, which includes payment of attorneys' fees, litigation expenses, and an enhancement award to Bethel. Before filing the instant Motion, Plaintiffs' Counsel conferred with defense counsel, who advised Defendant has no objection to the relief sought.

**A. The Settlement Terms**

---

[1] Plaintiff Bethel and the Opt In Plaintiffs will be collectively referred to hereinafter as "Plaintiffs".

The Maximum Settlement Amount is $437,500.00. Settlement Agreement 3.1(A). This amount covers: (a) the alleged damages payable to Plaintiffs and the Class Members; (b) an Enhancement Award to Bethel in the amount of $3,500.00; (c) the costs of Settlement Administration, not to exceed $10,000.00; and (d) subject to Court approval, Plaintiff's Counsel's attorneys' fees of up to $145,833.32 (1/3 of Maximum Settlement Amount), and a maximum of $6,000.00 in costs and expenses. The employers share of payroll taxes will be paid in addition to the Maximum Settlement Amount. *Id.*

The settlement is non-reversionary in nature. *Id*. at 3.1(A). The Settlement Administrator, CPT Group, will mail the Court-approved Settlement Notice ("Notice") to the Class Members. *Id.* at 2.3(C). Class Members will have sixty (60) days from the initial mailing of the Notices within which to postmark requests for exclusion from the Settlement, or object to the Settlement. *Id.* at 2.3(A). The Settlement Administrator will perform an NCOA check and will skip-trace returned Notices and re-mail the Notices within five (5) calendar days. *Id.* at 2.3(C). Class Members whose Notices are re-mailed shall have fourteen (14) calendar days from the remailing of the Notice in which to respond, or until the end of the 60-day Response Period, whichever is later. *Id*.

To opt-out of the Settlement, Class Members must mail a signed statement to the Settlement Administrator, *via* First Class United States Mail, stating that they are opting out of the Settlement. *Id.* at 2.3(D). Any individual who opts out will not be permitted to object to the terms of the Settlement Agreement. *Id.* Class Members who wish to object to the Settlement must file a written objection and notice of intention to appear at the final approval hearing with the Clerk of the Court, and send copies to the Settlement Administrator, Plaintiffs' counsel, and counsel for Defendant. *Id.* at 2.3(E). Any written objection must state each specific reason in support of the objection and any legal support for each objection, and must include the name, address, telephone

number, and dates the individual worked as a store manager for Bluemercury in New York. *Id.* If the Court rejects the objection, the individual will be bound by the terms of the Settlement. *Id.*

Class Members who do not opt out, or successfully object to the settlement will be issued a Settlement Check. *Id.* at 3.1(C). Class Members will have one hundred twenty (120) calendar days after the issuance of their Settlement Checks to redeem their settlement payments. *Id.* The checks of any Class Members who do not redeem their Settlement Checks within the applicable period will be voided, and a stop-payment will be placed. Such Class Members' claims will remain released by the Settlement. *Id.* The Settlement Administrator will distribute the uncashed funds and any interest that has accrued thereon, to the Office of the New York State Comptroller's Office of Unclaimed Funds. *Id.*

Each Class Member will release all federal, state, and local wage and hour claims, including statutory claims, including, but not limited to, any FLSA claims and any claims under the New York State Labor Law (N.Y. Lab. Law §190 *et seq.*), the Wage Theft Prevention Act (N.Y. Lab. Law § 195 *et. Seq.*) New York Codes, Rules and Regulations (12 N.Y.C.R.R. § 141 *et seq.*), for failure to pay minimum wage, failure to pay overtime, failure to pay for all hours worked, failure to provide meal and rest periods, failure to timely pay wages and final wages, failure to reimburse for business expenses, failure to furnish accurate wage statements or other notices, failure to keep accurate records, and any and all claims for recovery of compensation, overtime pay, minimum wage, premium pay, interest, and/or penalties. *Id.* at 3.6(A).

**B. Plaintiffs' Counsel is Well Qualified.**

Shavitz Law Group, P.A. ("SLG") has significant experience prosecuting wage and hour class and collective actions such as this one. Jones Decl. at ¶14. Since the founding of SLG in 1999, the firm has represented tens of thousands of employees in unpaid overtime and minimum

wage claims in actions across the United States. *Id.* at ¶ 15. The firm is highly experienced in collective and class action litigation for unpaid wages. *Id.* In recent years, the firm has served or been appointed as class counsel or co-class counsel in the following cases, among others:

> *Fiore v. Goodyear Tire & Rubber Co.*, No. 09 cv 843 (M.D. Fla);

> *Hosier v. Mattress Firm, Inc.*, No. 10 cv 00294 (M.D. Fla.);

> *Romero v. Florida Power & Light Co.*, No. 09 cv 1401 (M.D. Fla.);

> *Saliford v. Regions Fin. Corp. et al.*, No. 10 cv 610310 (S.D. Fla.);

> *Raley v. Kohl's Corp., et al.*, No. 09 cv2340 (M.D. Fla.);

> *Simpkins v. Pulte Home Corp.*, No. 08 cv 00130 (M.D. Fla.);

> *Biscoe-Grey v. Sears Holding Corp.*, No. 09 cv 81408 (S.D. Fla.);

> *Mayfield v. Lennar Corp.*, No. 08 cv 426 (M.D. Fla.);

> *Cerrone v. KB Home Florida, LLC et al.*, No. 07 cv 14402 (S.D. Fla.);

> *Lewis v. Iowa Coll. Acq. Corp. & Kaplan Higher Educ. Corp.*, No. 08 cv 61011 (M.D. Fla.);

> *Patterson v. Palm Beach Cnty. Sch. Bd.*, No. 07 cv 80240 (S.D. Fla.);

> *Briggs, et. al. v. PNC Fin. Servs. Gr., Inc., et al.,* No. 15 cv 10447 (N.D. Ill.);

> *Williams, et al. v. Follett Corporation, et al.,* No. 17 cv 02318 (N.D. Ill.);

> *Watson v. BMO Financial Corp., et al.,* No. 15 cv 11881 (N.D. Ill.);

> *McCue v. MB Financial, Inc. et al.*, No. 15 cv 988 (N.D. Ill.);

> *Robbins v. Abercrombie & Fitch Co.*, No. 15 cv 6187 (W.D.N.Y.);

> *Besic v. Byline Bank, Inc., et al.*, No.15 cv 8003 (N.D. Ill.);

> *Snodgrass v. Bob Evans Farms, Inc.*, No. 12 cv 768 (S.D. Ohio);

> *Waggoner v. U.S. Bancorp. et al.,* No. 14 cv 1626 (N.D. Ohio);

*Kampfer v. Fifth Third Bank*, No. 14 cv 2849 (N.D. Ohio);

*Bucceri v. Cumberland Farms, Inc.*, No. 15 cv 113955 (D. Mass.);

*Danley v. Office Depot, Inc., et al.*, No. 14 cv 81469 (S.D. Fla.);

*Essex v. The Children's Place, Inc.*, No. 15 cv 05621 (D.N.J.);

*Krokos, et al v. The Fresh Market, Inc.,* No. 16 cv 12082 (D.Mass.);

*Long v. HSBC USA Inc.*, No. 14 cv 6233 (S.D.N.Y.);

*Prena v. BMO Financial Corp.*, et al., No.14 cv 09175 (N.D. Ill.);

*Puglisi v. TD Bank N.A.,* No. 13 cv 6037 (E.D.N.Y.);

*Roberts v. TJX Cos., Inc., et al.*, No. 13 cv 13142 (D. Mass.);

*Stallard v. Fifth Third Bank, et al,*. No. 12 cv 01092 (W.D.Pa.);

*Amador v. Morgan Stanley & Co, LLC.* No. 11 cv 4326 (S.D.N.Y.);

*Wright v. Flagstar Bank FSB et al.,* No. 13 cv 15069 (E.D. Mich.);

*Zeltser v. Merrill Lynch & Co., Inc., et al.,* No. 13 cv 1531 (S.D.N.Y.);

*Clem v. Keybank, N.A.*, No. 13 cv 789 (S.D.N.Y.);

*Yuzary v. HSBC Bank USA, N.A.*, No. 12 cv 3693 (S.D.N.Y.);

*Beckman v. KeyBank, N.A.*, No. 12 cv. 7836 (S.D.N.Y.);

*Hernandez v. Merrill Lynch & Co., Inc., et al.*, No. 11 cv 8472 (S.D.N.Y.);

*Palacio v. E*TRADE Fin. Corp., et al.*, No. 10 cv 4030 (S.D.N.Y.);

*Stewart v. Prince Telecom, et al.*, No. 10 cv 4881 (S.D.N.Y.);

*Nash v. CVS Caremark Corp.*, No. 09 cv 79 (D.R.I.);

*Cottle v. Papa Murphy's Company Stores, Inc.,* No. 3:19-cv-45 (M.D. Fla.).

Gregg Shavitz is a graduate of the University of Miami School of Law with an undergraduate degree from Tufts University. *Id.* at 17. Mr. Shavitz is an experienced trial attorney

7

with a practice that concentrates on representing plaintiffs in unpaid wage litigation involving the FLSA, and state laws.  Mr. Shavitz has represented tens of thousands of such plaintiffs over that period of time.  *Id.*  Additionally, he has lectured in the past at seminars sponsored by the Labor and Employment Section of the Florida Bar, and has spoken at the Labor and Employment Section Certification Review Seminar on two (2) separate occasions as well as the Academy of Florida Trial Lawyers Workhorse Seminars.  *Id.*  He has also been awarded Florida Trend Magazine's Legal Elite for various years including 2014 in the area of Labor & Employment law; South Florida Legal Guide – Top Lawyer – Wage and Hour law – 2009-2019; Top Lawyer Up and Comer – Wage and Hour law – 2004, 2006, and 2009; and South Florida Legal Guide – Top Lawyers List – 2009-2019; among other awards and honors.  Mr. Shavitz has also earned the distinction of Top Lawyer in Palm Beach Illustrated (2018), and is a lifelong fellow of the Florida Bar Foundation. *Id.*  Mr. Shavitz has held the highest AV Peer Review Rating from LexisNexis Martindale-Hubbell for preeminent attorneys from 2000 to the present.  Mr. Shavitz has been admitted to the Florida Bar since 1994, and is also admitted to U.S. District Courts for the Southern, Middle and Northern Districts of Florida, the U.S. Eleventh Circuit Court of Appeals and U.S. Third Circuit Court of Appeals. *Id.*

Camar R. Jones has been an attorney with SLG since 2009.  *Id.* at ¶ 18. Mr. Jones has 19 years' experience litigating employment matters under state and federal anti-discrimination and wage and hour laws. *Id.* Prior to joining SLG, he worked as an associate attorney with the Fort Lauderdale labor and employment boutique, The Amlong Firm, representing plaintiffs in discrimination, unpaid wages and FLSA claims throughout South Florida, and with The Kopelowitz Ostrow Firm, PA, where he represented plaintiffs in discrimination, unpaid wages, FLSA, USERRA claims, and FMLA claims. *Id.* Additionally, he has counseled employers on

compliance with the various state and federal labor and employment laws, defended employers in claims filed by employees, and represented employers in enforcing non-compete and trade secret agreements. *Id.* Mr. Jones currently represents plaintiffs in collective actions in Federal Courts throughout the country, and has tried multiple cases to verdict. *Id.* Mr. Jones received his Juris Doctor degree from Stetson University College of Law in 2003. *Id.* He is admitted to the Florida Bar, the U.S. District Courts for the Southern, Middle, and Northern Districts of Florida, and the District of Colorado, as well as the Eleventh Circuit Court of Appeals. *Id.* He is also AV-Preeminent rated by LexisNexis Martindale-Hubbell, and has been named a "Rising Star" and "SuperLawyer" every year since 2013. *Id.*

Attorney Michael Palitz graduated from the College of the Holy Cross in 2005 with a B.A. and majored in Economics and History. *Id.* at 19. After receiving his Juris Doctor degree, *cum laude*, from Pace Law School in 2010 where he also served as the Editor-in-Chief of the Pace International Law Review, he was admitted to the New Jersey and New York Bars in June 2010 and September 2010, respectively. *Id.* He is admitted to this Court and the U.S. District Courts for the District of New Jersey, the Eastern District of New York, the Southern District of New York, the Northern District of New York, the District of Colorado, and the Western District of New York. Mr. Palitz has presented before the Suffolk County Bar Association on FLSA issues. *Id.* He has focused his practice exclusively on workers' rights and litigating complex wage and hour class and collective actions throughout the country, including trying a FLSA collective action arbitration to a verdict for employees. *Id.* During the course of his 13-year career as an attorney, he has represented thousands of employees in class and collective action litigation and recovered more than $200,000,000 for employees. *Id.*

SLG's lodestar amount in this action totals $261,150.00, as outlined below (*Id.* at ¶ 20):

| Timekeeper | Rate | Hours | Totals |
|---|---|---|---|
| Gregg Shavitz | $750.00 | 56.5 | $42,375.00 |
| Camar Jones | $600.00 | 270.3 | $162,180.00 |
| Michael Palitz | $600.00 | 80.5 | $48,300.00 |
| Paralegals | $150.00 | 55.3 | $8,295.00 |
| **Totals** | | **462.6** | **$261,150.00** |

In addition to attorneys' fees, SLG has also incurred $5,992.00 in costs, as outlined below:

| Item | Amount |
|---|---|
| Eastern District of New York filing fee | $402.00 |
| Service of Process | $210.00 |
| Pro Hac Vice filing fee | $200.00 |
| Notice Administration | $2,630.00 |
| Mediator fee | $2550.00 |
| **Total** | **$5,992.00** |

## II.    MEMORANDUM OF LAW

A plaintiff may settle and release FLSA claims against an employer by obtaining court approval. *See Taylor v. Progress Energy, Inc.*, 415 F.3d 363, 374 (4th Cir. 2005). "Courts greatly favor the settlement[] of cases and allowing litigants to achieve their own resolution of disputes." *Faile v. Lancaster County*, No. 0:10-cv-02809-CMC, 2012 U.S. Dist. LEXIS 189610, at *12 (D.S.C. Mar. 8, 2012) (*citing Lomascolo v. Parsons Brinckerhoff, Inc.*, No. l:08-cv-1310 (AJT/JFA), 2009 U.S. Dist. LEXIS 89129, at *10 (E.D. Va. Sept. 28, 2009)).  When approving a settlement, the court must determine whether the agreement reflects a "fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Taylor*, 415 F.3d at 374. Courts generally consider the following factors in determining whether the resolution is fair and reasonable: "(1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiff; (5) the probability of plaintiff's success on the merits and the amount of the settlement in relation to the potential recovery." *In re Dollar Gen. Stores FLSA Litig.*, No. 5:09-MD-1500, 2011 WL 3904609, at *2

(E.D.N.C. Aug. 23, 2011) (quotation marks omitted). Where the settlement agreement provides for an award of attorneys' fees, the court also examines whether that amount is reasonable. *Id.*

A *bona fide* dispute exists between the parties. Plaintiffs allege that as SMs, they worked off the clock, and were not paid the full extent of the overtime they worked. Defendant denies Plaintiffs' claims, and maintains Plaintiffs at all times were properly compensated. Plaintiffs self-reported their hours, and Defendant maintained policies pursuant to which Plaintiffs could have had their time records adjusted to include the time worked off the clock. Defendant further maintains that this action would be decertified because of the varying experiences of SMs such that they may not be able to satisfy the numerosity, commonality, and typicality requirements of Rule 23. Therefore, there are genuine disputes that favor approval of the settlement. *Rivera v. Dixson*, No. TDC-14-cv-2901, 2015 WL 427031, at *3 (D. Md. Jan. 30, 2015).

### A. The Settlement Agreement Represents a Fair and Reasonable Resolution of the Parties' Disputes.

### 1. The Parties Engaged in Extensive Discovery Before Settlement.

The parties exchanged document requests and interrogatories, and exchanged over 1,000 pages of documents including payroll records, time records and company policies, and various alleged off the clock communications. From this discovery exchange, the parties were able to assess the nature of the alleged off the clock communications, the number of hours Plaintiffs recorded, the number of hours for which they were paid, and the number of hours (if any) that they potentially were not paid. Thus, "the parties have had adequate time to assess each other's claims and defenses, and to properly weigh the benefits of a settlement before trial." *In re Dollar Gen. Stores FLSA Litig.*, 2011 WL 3904609, at *3.

### 2. Settling Now Would Allow the Parties to Avoid the Additional Expenses Related to Discovery, Further Motion Practice, and Trial.

The parties resolved this action before embarking on the depositions of the Plaintiffs. In the parties' assessment, the discovery obtained at that time provided the parties sufficient basis to resolve the case fairly.  Had the parties proceeded with depositions, they would have had to shoulder the cost of nine (9) Plaintiff depositions (ECF No. 71), as well as depositions of Defendant's corporate representatives, and depositions of Plaintiffs' supervisors.  The parties would have also needed to engage in further ESI production, including production of email and text messages by both parties.  Discovery of that magnitude would cost several thousand dollars which could be put toward resolution of the claims.

"Therefore, the settlement[], if approved, would enable the[] [parties] to avoid the time and expense of further litigation to resolve the moving [P]laintiffs' claims, whether through summary judgment or trial." *In re Dollar Gen. Stores FLSA Litig.*, 2011 WL 3904609, at *3. *See also Devine v. City of Hampton, Virginia*, No. 4:14-cv-81, 2015 WL 10793424, at *2 (E.D. Va. Dec. 1, 2015) ("The parties also litigated certification in a contested motion resolved before settlement. Both the discovery conducted, and the stage of proceedings, suggest the parties' decision to settle was well informed.")

### 3. There Has Been No Fraud or Collusion.

The parties have vigorously litigated this case, including conditional certification, discovery, and preparation to engage in further discovery.  This discovery would lead to motions for decertification, class certification, and summary judgement. *See, e.g.*, *In re Dollar Gen. Stores FLSA Litig.*, 2011 WL 3904609, at *3 ("The court finds that there is a complete absence of evidence of fraud or collusion. It is clear from the record and the undersigned's numerous

interactions with counsel that while they were professional in their dealings with one another, they zealously pursued their respective clients' interests.")

Extensive arm's-length negotiations between experienced counsel and use of a mediator are further evidence that the settlement was not collusive. *See, e.g.*, *Day*, 2018 WL 2473472, at *1 ("Here, the settlement meets the standard for approval. The settlement was the result of pre-suit investigation and substantial arm's-length negotiations over disputed issues between counsel well versed in wage and hour law, with the assistance of a neutral mediator."); *Devine* 2015 WL 10793424, at *2 (finding no fraud or collusion because "[t]he settlement reached by the parties . . . was concluded following arms-length negotiation, during which both sides were represented by experienced counsel," and "[t]he parties also participated in multiple meetings with Magistrate Judge Nathaniel Fox, as well as Mediator Wittenberg and Mediator Isserles to facilitate the mediated settlement"); *Villegas v. J.P. Morgan Chase & Co.*, No. 09-cv-00261 SBA EMC, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) ("[T]he Settlement was reached following two sessions with a private mediator experienced in wage and hour class actions. This tends to support the conclusion that the settlement process was not collusive.").

Accordingly, there is no evidence of fraud or collusion.

**4. Plaintiffs' Counsel is Well Qualified and Experienced.**

Plaintiffs are represented by well-credentialed attorneys with significant labor-and-employment experience. *See, e.g.*, *In re Dollar Gen. Stores FLSA Litig.*, 2011 WL 3904609, at *3 (approving settlement where counsel had "significant experience handling matters such as the instant litigation"). Moreover, because "settlement negotiations took place at arm's-length between highly experience[d] and competent counsel[,] [t]heir assessment of the settlement as fair and reasonable is entitled to considerable weight." *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491,

509 (W.D. Pa. Dec. 22, 2003). *See also Devine*, 2015 WL 10793424, at *2 ("In evaluating a settlement a court is entitled to rely on the judgment of experienced counsel for the parties and should hesitate to substitute its own judgment for that of counsel. Counsel believe the settlement is fair and reasonable, and although the court is not bound by counsel's opinion, it is nonetheless entitled to great weight.") (quotation marks, text alterations, ellipses, and citation omitted).

### 5. The Settlement Amount is Fair Given the Risks of Litigation and Projected Recovery.

The settlement reflects a positive result for Plaintiffs and the Class Members. The risks and costs of continued litigation are high. Defendant would vigorously defend this action on the merits, and there is a chance that Defendant could prevail.  Defendant categorically denies that any SMs worked off the clock, and even if they did, there were mechanisms in place for SMs to receive compensation for such time.  A trier of fact could ultimately conclude that SMs did not work off the clock and have been fully compensated for all hours worked. In that event, Plaintiffs would recover nothing.

Here, Plaintiffs are receiving the equivalent of compensation for one (1)  hour of uncompensated overtime each week although Defendant maintains there is no liability at all.  Thus, the settlement agreement fairly and reasonably resolves Plaintiffs' claims. *See, e.g.*, *Anderson v. Sara Lee Corp.*, No. 4:03-cv-00031-H, 2013 WL 12250391, at *1 (E.D.N.C. May 16, 2013) ("The Court further finds the settlement was negotiated at arm's length by the parties and is a fair and reasonable resolution of the claims asserted and released by the Plaintiffs, in light of the parties' respective prospects for success (or failure) were the case to proceed to trial on the merits.").

### 6. The Reaction of the Class Has Been Positive.

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Global Techs. Corp.*,

186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002). The lack of class member objections "may itself be taken as evidencing the fairness of a settlement." *RMED Int'l, Inc. v. Sloan's Supermkts., Inc.,* No. 94 Civ. 5587. 2003 WL 21136726, at *1 (S.D.N.Y. May 15, 2003). Here, the Notice explicitly informs class members of their rights and the procedures to participate in the settlement.

### 7. Establishing a Class and Maintaining it Through Trial Would Not Be Simple.

Even if preliminary class status is granted, the risk of maintaining that class certification through trial is also present. Further, Defendant may argue on a decertification motion that individual questions preclude class certification. Because the claims at issue are "off the clock" claims, they are vulnerable to a highly individualized analysis on a person-by-person basis, such as which, if any, class members performed work off the clock in the store, as opposed to those who only engaged in out of store communications which they contend were compensable, and which SMs worked through lunch. Further, the amount of "off the clock" time is susceptible to individualized analyses as well. Risk, expense, and delay permeate such a process. Settlement eliminates this risk, expense, and delay. This factor also favors final approval.

### 8. Defendants' Ability to Withstand a Greater Judgment.

Defendant's ability to withstand a greater judgment is uncertain. However, even if Defendant was able to withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9 (alterations and citation omitted)). Here, the Settlement Agreement provides Class Members with reasonable and more prompt relief than they would receive at the conclusion of the litigation, presumably years from now, and which relief is not guaranteed due to

the risks involved in proving liability and damages, and the current market volatility with respect to brick and mortar retail stores.

### B.  The Requested Payments for Attorneys' Fees and Expenses are Reasonable.

Courts routinely award counsel 1/3 of the gross common fund as attorneys' fees and reimbursement of litigation expenses. "On the question of attorneys' fees, . . . in a common fund case such as this, a reasonable fee is normally a percentage of the Class recovery." *Smith v. Krispy Kreme Doughnut Corp.*, No. 1:05-cv-00187, 2007 WL 119157, at *1 (M.D.N.C. Jan. 10, 2007). To determine the reasonableness of the fee award, courts consider the following factors: "(1) time and labor expended; (2) novelty and difficulty of the questions raised; (3) skill required to properly perform the legal services; (4) attorney's opportunity costs in pressing the litigation; (5) customary fee for like work; (6) attorney's expectation at the outset of litigation; (7) time limitations imposed by the client or circumstances; (8) amount in controversy and results obtained; (9) experience, reputation and ability of the attorney; (10) undesirability of the case within the legal community in which the suit arose; (11) nature and length of the professional relationship between the attorney and client; and (12) fee awards in similar cases." *Smith*, 2007 WL 119157, at *1.

"It is not necessary for the Court to conduct a lodestar analysis, but if one were to 'cross-check' the requested 33.33% fee against the range of reasonable fee awards under a lodestar analysis, it is apparent that a 'lodestar cross-check' confirms the reasonableness of the requested percentage fee." *Smith*, 2007 WL 119157, at *3. Here, Plaintiffs' counsel devoted 462.6 hours of attorney and paralegal time to this matter, amounting to $261,150.00 in fees that they are requesting.  Therefore, SLG has already incurred over $100,000.00 more the attorneys' fees it will recover under the Settlement, and still has additional work to perform to effectuate the settlement.

The Court should also order the reimbursement of counsel's litigation expenses. *See, e.g.*, *Smith*, 2007 WL 119157, at *3-4 ("An attorney who creates or preserves a common fund by judgment or settlement for the benefit of a class is entitled to receive reimbursement of reasonable fees and expenses involved . . . . Class Counsel's request for reimbursement of actual expenses incurred to date totaling $87,433.32 is hereby approved as fair and reasonable."); *Day*, 2018 WL 2473472, at *2 (awarding 1/3 of gross common benefit fund as attorneys' fees and reimbursing all expenses); *Osman v. Grube, Inc.*, No. 3:16-cv-00802-JJH, 2018 WL 2095172, at *6 (N.D. Ohio May 4, 2018) (same); *Graudins v. Kop Kilt, LLC*, No. 14-cv-2589, 2017 WL 736684, at *11 (E.D. Pa. Feb. 24, 2017); *Devlin v. Ferrandino & Son, Inc.*, No. 15-cv-4976, 2016 WL 7178338, at *11 (E.D. Pa. Dec. 9, 2016) (same); *Bozak v. FedEx Ground Package Sys., Inc.*, No. 3:11-cv-00738-RNC, 2014 WL 3778211, at *7 (D. Conn. July 31, 2014) (approving "over $30,557.00 in out of pocket costs prosecuting this case, including costs for electronic research, court fees, court reporters, deposition transcripts, postage and courier fees, working meals, photocopies, telephone calls, travel and Plaintiffs' portion of the mediator's fees," as well as $686,666.66 for attorneys' fees). SLG's costs include the cost of the mediator, the costs of settlement administration, filing fees, and service of process. All of these expenses were reasonably and necessarily incurred in obtaining this result for Plaintiffs and the Class Members.

### C.    The Requested Enhancement Award is Reasonable.

The requested $3,500.00 enhancement award for Bethel's active participation in the litigation is reasonable. In fact, the award "is comparatively on the lower end of awards deemed reasonable." *Thompson v. Qwest Corp.*, No. 17-cv-1745-WJM-KMT, 2018 WL 2183988, at *3 (D. Colo. May 11, 2018); *See also Osman*, 2018 WL 2095172, at *2 ($7,500); *Day*, 2018 WL 2473472, at *2 ($7,000); *Graudins*, 2017 WL 736684, at *9 ($7,500); *Devlin*, 2016 WL 7178338,

at *11 ($7,500); *Bozak*, 2014 WL 3778211, at *4 ($10,000); *Smith*, 2007 WL 119157, at *4 ($15,000).

Bethel has actively participated in this litigation since its inception. Prior to filing this case, Bethel did an extensive amount of work gathering documents and summarizing relevant facts for the Complaint. She also participated in preparation of the Complaint. Bethel also actively participated in discovery, and provided additional facts in preparation for mediation. She has kept in contact with counsel, making herself available to answer questions at every stage of the case, advocating for Class Members, and always put their interests before her own.

**D.    The Settlement Class Meets the Legal Standard for Class Certification.**

When faced with a proposed class action settlement, courts first examine whether the settlement class can be certified. *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). The Court should now grant final certification because all of the requirements of Federal Rule of Civil Procedure 23 ("Rule 23") are met. Plaintiffs respectfully request that the Court certify the Class, as defined in the Settlement Agreement. Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires the Court to find that: "[Q]uestions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* at (b)(3). In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt

a standard of flexibility" in evaluating class certification. *Reade-Alvarez v. Eltman, Eltman & Cooper*, P.C., 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (*quoting Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

### 1. Numerosity

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[N]umerosity is presumed at a level of 40 members . . ." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Plaintiff clearly satisfies the numerosity requirement as there are approximately 138 class members.

### 2. Commonality

The proposed class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Although the claims need not be identical, they must share common questions of fact or law. *Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 181 (W.D.N.Y. 2005). There must be a "unifying thread" among the claims to warrant class certification. *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986). Courts construe the commonality requirement liberally. *Frank*, 228 F.R.D. at 181. In Plaintiff's view, the required relationship between the claims of Plaintiff and those of the class clearly exists here. This case involves numerous common issues.

Here, all Plaintiffs are current or former employees of Defendant. Although they allege differing numbers of hours worked and thus different damages, all present the common claim that they worked off the clock, and were not paid for all of the hours they worked. *See, e.g., Rehberg v. Flowers Baking Co. of Jamestown*, LLC, 2015 WL 1346125, at *8, 16 (W.D.N.C. Mar. 24,

2015) (concluding that "the similarities between the Plaintiffs' claims far outweigh their differences" because "[w]hile each distributor may have carried out the essential functions of his job slightly differently, . . . all distributors were instructed to carry out their jobs subject to the Distributor Agreement, had substantially similar job duties, were subject to a common policy of being classified as independent contractors, and now claim violations . . . based on this classification."); *id.* at *17 ("Given that Defendants ha[d] a well-established company policy of classifying all distributors as independent contractors, the court is less concerned by the variations in Plaintiffs' employment circumstances."). Thus, Plaintiffs satisfy the commonality requirement.

### 3. Typicality

Typicality is also satisfied. Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (internal quotation marks omitted). "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182. "[M]inor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux v. Celani,* 987 F.2d 931, 936-37 (2d Cir. 1993).

Here, Plaintiff's claims arise from the same factual and legal circumstances that form the bases of the Class Members' claims. Plaintiffs and the Class Members performed the same or similar job duties. Plaintiffs makes the same allegations regarding off the clock work. Because Plaintiff's wage and hour claims arise from the same factual and legal circumstances that form the basis of the Rule 23 Class Members' claims, Plaintiff satisfies the typicality requirement. See *Dorn v. Eddington Sec., Inc.*, 2011 WL 382200, at *2 ("Plaintiff satisfies Federal Rule of Civil Procedure

23(a)(3) because Plaintiffs' claims for overtime pay, regular wages, and unlawful tips arise from the same factual and legal circumstances that form the bases of the class members' claims."); *Clark v. Ecolab, Inc*., 2009 WL 6615729, at *4 (S.D.N.Y. 2009); *Frank*, 228 F.R.D. at 182.

### 4. Adequacy of the Named Plaintiff

Named Plaintiff Bethel, is an adequate class representative. Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P.23(a)(4). "The adequacy requirement exists to ensure that the named representatives will have an interest in vigorously pursuing the claims of the class, and … have no interests antagonistic to the interests of other class members." *Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (internal quotation marks omitted); see also *Campos v. Goode, No*. 10 Civ. 224, 2010 WL 5508100, at *2 (S.D.N.Y. Nov. 29, 2010); *McMahonv. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at *2 (S.D.N.Y. Mar. 3, 2010). "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Dziennik v. Sealift, Inc.,* No. 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (internal quotation marks omitted). Here, Plaintiff satisfies the adequacy requirement because there is no evidence that Plaintiff and class members' interests are at odds – on the contrary, Plaintiff's interests are clearly aligned with the interests of the class. *See Diaz v. E. Locating Serv., Inc*., No. 10 Civ. 4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010) (finding adequacy requirement met where plaintiffs' interests were not antagonistic or at odds with those of class members); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *2 (S.D.N.Y. Aug. 23, 2010) (same); *McMahon v. Olivier Cheng Catering & Events*, LLC, 2010 WL 2399328, at *2 (same). Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members and that a class

action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation*." Amchem Prods., Inc. v. Windso*r, 521 U.S. 591, 623 (1997). Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Rossini v. Ogilvy & Mather, Inc.,* 798 F.2d 590, 598 (2d Cir. 1986).

### 5. Common Questions Predominate

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole…. predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig*., 280 F.3d 124, 136 (2d Cir. 2001) (internal quotation marks omitted), abrogated on other grounds by Miles v. Merrill Lynch & Co. *In re Initial Pub. Offering Sec. Litig*., 471 F.3d 24 (2d Cir. 2006)). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check*, 280 F.3d at 139. Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of N.Y.*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, the Class Members' common factual allegations and common legal theory predominate over any factual or legal variations among Class Members. See *Clark*, 2009 WL 6615729, at *5 (common factual allegations and common legal theory predominated over factual and legal variations among Class Members in wage and hour misclassification case); *Torres v. Gristede's Corp*., No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006), at *16 (plaintiffs "introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay," and "this issue predominates over any individual calculations of

overtime wages"). The only individualized issues pertain to the calculation of damages, and it is well-settled that individualized damages calculations do not defeat predominance. *See Frank*, 228 F.R.D. at 183 (collecting cases holding that calculation of damages in overtime litigation does not impact the predominance analysis). Plaintiff therefore satisfies Rule 23(b)(3).

### 6. A Class Action Is a Superior Mechanism

Plaintiff also satisfies the superiority requirement. Superiority analyzes whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3). Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually. See *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998). Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. See *Amchem,* 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial.") (internal citation omitted); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement.") Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule." *In re Visa Check*, 280 F.3d at 140 (internal quotation marks omitted). 1023 (9th Cir. 1998); *Diaz*, 2010 WL 5507912, at *3. Plaintiff and class members have limited financial resources

23

with which to prosecute individual actions. Class treatment will create uniform resolution of the issues and achieve judicial economy, convenience and fairness to all parties.

## III.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court: (1) certify the settlement class; (2) approve the settlement as fair, reasonable, adequate and binding on all Class Members who have not timely opted-out or successfully objected to the settlement; (3) approve the FLSA settlement; and (4) dismiss the Litigation with prejudice.

Dated: October 9, 2023
     Boca Raton, FL

Respectfully submitted,

**/s/ CAMAR R. JONES**
Camar R. Jones (admitted *pro hac* vice)
**SHAVITZ LAW GROUP, P.A.**
951 Yamato Road, Suite 285
Boca Raton, FL 33431
Tel: 561-447-8888
Fax: 561-447-8831
cjones@shavitzlaw.com

**SHAVITZ LAW GROUP, P.A.**
Michael J. Palitz
SHAVITZ LAW GROUP, P.A.
830 3rd Avenue, 5th Floor
New York, New York 10022
Tel:    (800) 616-4000
Fax:    (561) 447-8831
mpalitz@shavitzlaw.com
***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of Court using CM/ECF on October 9, 2023.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

    /s/ Camar R. Jones
    Camar R. Jones

4881-1107-4949, v. 1