**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------X
LESLIE BETHEL, on her behalf of herself   :
and all others similarly situated,            :
                                         :
      Plaintiff,                   :
                                         :    Case No: 1:21-cv-02743
            v.                      :
                                         :
BLUEMERCURY, INC., a Delaware      :
corporation,                             :
                                         :
      Defendant.                  :
------------------------------------------------------X

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF *UNOPPOSED* MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT, AND APPROVAL OF ATTORNEYS' FEES AND COSTS, <u>AND PLAINTIFF'S ENHANCEMENT AWARD</u>**

**TABLE OF CONTENTS**

INTRODUCTION…………………………………………..…………...………………………… 1

I.     FACTUAL AND PROCEDURAL BACKGROUND…..……..………………………… 2

II.    CLASS SETTLEMENT PROCEDURE……………………….……………………....3

III.   FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE...…………………4

       A.  Procedural Fairness……………………………………………………………….. 4

       B.  Substantive Fairness………………………………….…...……………….......6

            1.  Further Litigation and Trial Would Be Complex, Costly, and Long
                (*Grinnell* Factor 1)……………………………...……………………..6

            2.  The Reaction of the Class Members (*Grinnell* Factor 2) ……………....7

            3.  Discovery Has Advanced Far Enough to Allow the Parties to Resolve the
                Case Responsibly (*Grinnell* Factor 3)……………………………..…...7

            4.  Plaintiffs Would Face Risk if the Case Proceeded (*Grinnell* Factors 4 and
                5)………………………………………………………………….……...8

            5.  Establishing and Maintaining The Class Through Trial Presents Risk
                (*Grinnell* Factor 6)…………………………………...……………..…...9

            6.  Defendant's Ability to Withstand a Greater Judgment, While Not
                Determinative, Favors Approval (*Grinnell* Factor 7)……………..…..…..9

            7.  The Settlement Fund Is Substantial, Even in Light of the Best Possible
                Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and
                9)………………………………………………………………………10

       C.  The Court Should Approve the FLSA Settlement Pursuant to *Cheeks v.*
            *Freeport Pancake House, Inc*., 796 F.3d 199 (2d Cir. 2015). …………..……...9

IV.    CERTIFICATION OF THE CLASS IS APPROPRIATE...……………….…………...12

       A.  Numerosity……………………………………………….…………...12

       B.  Commonality...…………………………………………………..…………...13

       C.  Typicality……………………….………….......…………..………..13

       D.  Adequacy……………………… ………………………………..……...14

E.  Certification Is Proper Under Rule 23(b)(3) …..……………..………..15

1.  Common Questions Predominate……………..………..15

2.  Class Action is a Superior Mechanism………..………..16

V.  THE COURT SHOULD APPROVE THE ENHANCEMENT AWARD BECAUSE PLAINTIFF'S EFFORTS CONTRIBUTED GREATLY TO THIS SETTLEMENT…...17

VI.  PLAINTIFFS' COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND COSTS ARE REASONABLE AND SHOULD BE APPROVED………………………………………19

CONCLUSION..…..……………………………………………………..……..………..26

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591, 623 (1997) ............................................................... 15, 17

*Anderson v. Sara Lee Corp.,* No. 4:03-cv-00031-H,
  2013 WL 12250391 (E.D.N.C. May 16, 2013) ................................... 11

*In re Austrian & German Bank Holocaust Litig.,*
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) ......................................... 6, 8, 10

*Ballinger v. Advance Magazine Publishers, Inc.,* No. 13 Civ. 4036,
  2014 WL 7495092 (S.D.N.Y. Dec. 29, 2014) ................................... 10

*Beckman v. KeyBank, N.A.,*
  293 F.R.D. 467 (S.D.N.Y. 2013) ..................................................... 23

*Campos v. Goode,* No. 10 Civ. 224,
  2010 WL 5508100 (S.D.N.Y. Nov. 29, 2010) ................................... 14

*In re Citigroup Inc. Sec. Litig.,*
  965 F. Supp. 2d 369 (S.D.N.Y. 2013) ............................................. 23

*Cheeks v. Freeport Pancake House, Inc.,*
  796 F.3d 199 (2d Cir. 2015) ........................................................... 11

*City of Detroit v. Grinnell Corp.,*
  495 F.2d 448 (2d Cir. 1974) ....................................................... 6, 10

*Clark v. Ecolab Inc., Nos.* 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672,
  2010 WL 1948198 (S.D.N.Y. May 11, 2010) ..................................... 8

*Clark v. Ecolab, Inc.,*
  2009 WL 6615729 (S.D.N.Y. 2009) ........................................... 14, 16

*Consol. Rail Corp. v. Town of Hyde Park,*
  47 F.3d 473 (2d Cir. 1995) ............................................................. 12

*D'Amato v. Deutsche Bank,*
  236 F.3d 78 (2d Cir. 2001) .............................................................. 5

*DeLeon v. Wells Fargo Bank, N.A.,* No. 12 Civ. 4494,
  2015 U.S. Dist. LEXIS 65261 (S.D.N.Y. May 11, 2015) ..................... 21

*Delijanin v. Wolfgang's Steakhouse Inc.,* No. 18 Civ. 7854,
  2021 WL 535635 (S.D.N.Y. Feb. 12, 2021) ..................................... 18

*deMunecas v. Bold Food, LLC, No. 09 Civ. 440,*
  2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ................................... 15

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006) ................................................. 14

*Devlin v. Ferrandino & Son, Inc.*, No. 15-cv-4976,
    2016 WL 7178338 (E.D. Pa. Dec. 9, 2016) ........................... 19, 25-26

*Diaz v. E. Locating Serv., Inc.*, No. 10 Civ. 4082,
    2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010) ........................ 15, 17

*Diaz v. Scores Holding Co.*,
    2011 U.S. Dist. LEXIS 112187 ............................................ 18

*Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271,
    2011 WL 9380874 (S.D.N.Y. Sept. 21, 2011) ...................... 9, 14

*Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659,
    2007 WL 1580080 (E.D.N.Y. May 29, 2007) ....................... 14

*Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*,
    62 F.4th 704 (2d Cir. 2023) ............................................... 17-18

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005) ................................... *passim*

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) ........................................................ 12

*Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ 3452,
    2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ........................ 6

*Goldberger v. Integrated Res., Inc.*,,
    209 F.3d 43 (2d Cir. 2000) .......................................... 6, 22-23, 25

*Graudins v. Kop Kilt, LLC*, No. 14-cv-2589,
    2017 WL 736684 (E.D. Pa. Feb. 24, 2017) ....................... 19, 25

*Green v. Wolf Corp.*,
    406 F.2d 291 (2d Cir. 1968) ............................................. 16

*Hyland v. Navient Corp.*,
    48 F.4th 110 (2d. Cir. 2022) ........................................... 18

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    302 F. Supp. 2d 180 (S.D.N.Y. 2003) ............................... 25

*In re Indep. Energy Holdings PLC*,
    2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ................... 5

*In re Initial Pub. Offering Sec. Litig.*,
    471 F.3d 24 (2d Cir. 2006) ............................................. 16

*Kamean v. Local 363, Int'l Bhd. of Teamsters*,
    109 F.R.D. 391 (S.D.N.Y. 1986) .................................................... 12-13

*Lynn's Food Stores, Inc. v. United States*,
    679 F.2d 1350 (11th Cir. 1982) ........................................................ 5

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997) ........................................................... 13

*McBean v. City of N.Y.*,
    228 F.R.D. 487 (S.D.N.Y. 2005) ..................................................... 16

*McEarchen v. Urban Outfitters, Inc.*,
    2017 U.S. Dist. LEXIS 33335 (E.D.N.Y. Mar. 7, 2017) ...................... 9

*McMahon v. Olivier Cheng Catering & Events, LLC, No. 08 Civ. 8713*,
    2010 U.S. Dist. LEXIS 18913 (S.D.N.Y. Mar. 3, 2010) .......... 4, 5, 14, 15

*Melito v. Experian Mktg. Solutions, Inc.*,
    923 F.3d 85 (2d. Cir. 2019) ........................................................... 17

*Mendes-Garcia v. 77 Deerhurst Corp., No. 11 Civ. 2797*,
    2014 U.S. Dist. LEXIS 188290 (S.D.N.Y. Aug. 19, 2014) .......... 19, 22, 23, 25

*Moses v. NY Times*,
    79 F.4th 235 (2d. Cir Aug. 17, 2023) ........................................... 11

*In re Painewebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y.) ............................................................. 8

*Osman v. Grube, Inc., No. 3:16-cv-00802-JJH*,
    2018 WL 2095172 (N.D. Ohio May 4, 2018) ................................ 19, 25

*Pasini v. Fishs Eddy, LLC, No. 16 Civ. 354*,
    2018 U.S. Dist. LEXIS 199213 (S.D.N.Y. Nov. 15, 2018) ............. *passim*

*Rehberg v. Flowers Baking Co. of Jamestown, LLC*,
    2015 WL 1346125 (W.D.N.C. Mar. 24, 2015) ................................. 13

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir 1993) ........................................................... 14

*Sand v. Greenberg, No. 08 Civ. 7840*,
    2010 U.S. Dist. LEXIS 1120 (S.D.N.Y. Jan. 7, 2010) ........................ 24

*Silva v. Little Fish, Corp., No. 10 Civ. 7801*,
    2012 U.S. Dist. LEXIS 89485 (S.D.N.Y. May 1, 2012) ................... 4, 20

*Stevens v. HMSHost Corp.*,
    2014 U.S. Dist. LEXIS 119653 (E.D.N.Y. Aug. 27, 2014) .................. 9

*Thompson v. Qwest Corp., No. 17-cv-1745-WJM-KMT*,

2018 WL 2183988 (D. Colo. May 11, 2018) ......................................................... 19

*Torres v. Gristede's Operating Corp., Nos. 04 Civ. 3316, 08 Civ. 8531, 08 Civ. 9627*,
2010 WL 2572937 (S.D.N.Y. June 1, 2010) .................................................... 3, 16

*Toure v. Cent. Parking Sys. of N.Y., No. 05 Civ. 5237*,
2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) ...................................................... 14

*Tyson Foods Inc. v. Bouaphakeo*,
136 S. Ct. 1036 (2016) .................................................................................... 15

*Velez v. Majik Cleaning Serv.*,
2007 U.S. Dist. LEXIS 46223 (S.D.N.Y. June 22, 2007) .................................... 18

*In re Visa Check/MasterMoney Antitrust Litig.*,
280 F.3d 124 (2d Cir. 2001) ...................................................................... 16, 17

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005) ............................................................................ 4, 5

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) ............................................................................. 4

*Willix v. Healthfirst, Inc., No. 07 Civ. 1143*,
2011 U.S. Dist. LEXIS 21102 (E.D.N.Y. Feb. 18, 2011) .................................... 19

*Wright v. Stern*,
553 F. Supp. 2d 337 (S.D.N.Y. 2008) ................................................................ 17

*Yuzary v. HSBC Bank USA, N.A., No. 12 Civ. 3693*,
2013 U.S. Dist. LEXIS 144327 (S.D.N.Y. Oct. 2, 2013) .................... 4, 17, 20, 24

**Statutes**

29 U.S.C. §216 ......................................................................................................... 2

New York Labor Law, Article 6, §§ 190 et seq .......................................................... 2

New York Labor Law, Article 19, §§ 650 et seq ......................................................... 2

**Rules**

Fed. R. Civ. P. 23 ............................................................................................. *passim*

**Other**

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ............................... 3, 4

## INTRODUCTION

Named Plaintiff LESLIE BETHEL ("Named Plaintiff" or "Bethel"), by and through her undersigned attorneys, respectfully submits this Memorandum of Law in Support of Plaintiffs' *Unopposed* Motion for Final Approval of Class and Collective Action Settlement. Defendant consents to this motion. The proposed settlement includes all non-exempt, hourly Store Managers (SMs) who were employed by Defendant Bluemercury in New York between March 31, 2015 and September 12, 2023 ("Class Members").

The Court preliminarily approved this class and collective action settlement on November 15, 2023, and ordered notice to be sent to the Class Members. Dkt. # 82. The reaction to the settlement has been uniformly positive and supportive. Plaintiffs' Counsel has received calls and e-mail messages in response to the Notice, in which Class Members express their gratitude for the benefits provided by the settlement. No Class Member has objected to the settlement. Accordingly, Plaintiffs' Counsel presents this settlement to the Court for final approval.

The Parties reached this settlement after over two (2) years of litigation, including the parties' briefing of Plaintiffs' Motion for Conditional Certification and various discovery disputes. As discussed in detail below, the proposed settlement satisfies all of the criteria for final approval under Rule 23 of the Federal Rules of Civil Procedure. The proposed settlement also warrants approval because the settlement was reached after sufficient discovery and contested litigation, and was the result of arm's length settlement negotiations conducted by experienced counsel and a mediator well-versed in wage and hour law.

By this Motion and with Defendant's consent, Plaintiffs respectfully request that the Court: (a) grant final approval of the Settlement Agreement (the "Agreement"), attached as Exhibit 1 to the Jones Decl.; (b) finally certify the class pursuant to Fed. R. Civ. P. 23; (c) authorize the Settlement Administrator to issue payments to the Class Members and perform the remaining obligations per

the Agreement's terms; (d) approve the Enhancement Award to the Named Plaintiff; (e) approve

Plaintiffs' Counsel's request for attorneys' fees and costs; and (f) enter a Final Order and Judgment

closing this case (*see* Proposed Final Order, attached hereto as Exhibit B).

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In her Complaint filed on March 31, 2021, Plaintiff alleged, on behalf of herself and

similarly situated SMs, that Defendant had a uniform, common and widespread policy pursuant to

which SMs nationwide worked overtime hours off-the-clock without compensation, in violation

of the Fair Labor Standards Act, 29 U.S.C. §216(b) ("FLSA"). Dkt. #1.  Plaintiff also asserted a

claim for unpaid overtime on behalf of herself and similarly situated non-exempt, hourly SMs who

worked for Defendant in New York pursuant to Federal Rule of Civil Procedure 23 to remedy

violations of the New York Labor Law ("NYLL"), Article 6, §§ 190 *et seq*., Article 19, §§ 650 *et

seq.*, and the supporting New York State Department of Labor regulations, 12 N.Y.C.R.R. Part

142 *et seq*. (collectively, the "New York Wage Laws").  Jones Decl. at ¶ 3.  Defendant denied

these allegations, and asserts that all of the SMs were paid for all hours worked.

The parties have negotiated a settlement in the amount of $437,500.00, which includes: (a)

the alleged damages payable to Plaintiff and the Class Members; (b) an Enhancement Award to

Bethel in the amount of $3,500.00; (c) the costs of Settlement Administration, not to exceed

$10,000.00; and (d) subject to Court approval, Plaintiff's Counsel's attorneys' fees of up to

$145,833.32 (1/3 of the gross settlement), and a maximum of $6,000.00 in costs and expenses.

Rather than repeat the detailed discussion of the litigation, mediation, settlement

negotiations, and the settlement terms set forth in the preliminary approval motion, Plaintiffs

respectfully incorporate that discussion herewith.  *See* Dkt. # 79 at pp 7-11.

Plaintiff provides the following details about the settlement administration process to date:

- On January 10, 2024, the Administrator mailed 138 notices to the Class Members.

- Of the 138 notices mailed, 5 notices were returned as undeliverable. The Administrator located new mailing addresses for these individuals and re-mailed the notices. One 1 Notice packet has been deemed undeliverable.

- March 11, 2024 was the deadline for exclusion from, and objection to, the settlement. No Class Member objected to or opted out of the Settlement.

Declaration of Jeremy Romero of CPT Group ("CPT Decl.") at ¶¶ 8-9 (appended as Exhibit C).

## II.    CLASS ACTION SETTLEMENT PROCEDURE

Rule 23's class action settlement procedure includes three steps:

1.    Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2.    Dissemination of mailed and/or published notice of settlement to all affected class members; and

3.    A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("Newberg"), §§ 11.22, *et seq.* (4th ed. 2002); *Torres v. Gristede's Operating Corp.*, Nos. 04 Civ. 3316, 08 Civ. 8531, 08 Civ. 9627, 2010 WL 2572937, at *3-5 (S.D.N.Y. June 1, 2010). This process safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of the class's interests.

The first two steps of the settlement procedure have been completed. The Court conditionally certified the Class Members under Rule 23 of the Federal Rules of Civil Procedure and authorized notice to Class Members. Dkt # 82. On January 10, 2024, the Administrator mailed the notices. CPT Decl. at ¶ 7. The purpose of the final approval hearing is to consider any objections to the settlement which may have been filed by class members, and to make a final

ruling on the fairness, adequacy, and reasonableness of the settlement. As noted above, in this case no objections have been filed. CPT Decl. at ¶ 10.

### III.   FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The law favors compromise and settlement of class action suits. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (citation omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *see also* Newberg § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

Courts in this District – including this Court – routinely grant final approval to settlements of FLSA/Rule 23 actions for unpaid overtime wages where, as here, the proposed settlement satisfies the relevant criteria. *See, e.g., McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 U.S. Dist. LEXIS 18913 (S.D.N.Y. Mar. 3, 2010); *Pasini v. Fishs Eddy, LLC*, No. 16 Civ. 354, 2018 U.S. Dist. LEXIS 199213 (S.D.N.Y. Nov. 15, 2018); *Silva v. Little Fish, Corp.*, No. 10 Civ. 7801, 2012 U.S. Dist. LEXIS 89485 (S.D.N.Y. May 1, 2012); *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 U.S. Dist. LEXIS 144327 (S.D.N.Y. Oct. 2, 2013); *Bahena v. Park Ave. S. Mgmt. LLC*, No. 15 Civ. 1507 (S.D.N.Y. Aug. 9, 2017) (Final Approval Order at ECF No. 182).

#### A.  Procedural Fairness

At the final approval stage, courts address the fairness, reasonableness, and adequacy of the settlement. Fed. R. Civ. P. 23(e). "Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005) (citation omitted). "A presumption

4

of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal citation and quotation marks omitted); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). A mediator's involvement in settlement negotiations supports a presumption of fairness. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in … settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Indep. Energy Holdings PLC*, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("the fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable."). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *McMahon*, 2010 U.S. Dist. LEXIS 18913, at *9 (quotation omitted).

This settlement was reached after Plaintiffs conducted a thorough investigation and evaluation of the claims, and conducted discovery including exchanging over 1,000 pages of documents including payroll records, time records and company policies. From this discovery exchange, the parties were able to assess the strengths and weaknesses of the claims and defenses, as well as their probability of success on the merits, successfully opposing Defendant's decertification motion (which Defendant made clear it intended to file) and class certification. Thus, the parties were armed with sufficient information to engage in informed, arms-length negotiations. The parties also attended a full day mediation with experienced wage and hour mediator, Michael Loeb, Esq., who facilitated arm's-length negotiations between the parties. Jones Decl. at ¶ 8. Accordingly, Plaintiff submits that the procedural fairness requirements have been satisfied.

### B.  Substantive Fairness

In evaluating the substantive fairness of a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  The *Grinnell* factors are: (1) "the complexity, expense and likely duration of the litigation;" (2) "the reaction of the class to the settlement;" (3) "the stage of the proceedings and the amount of discovery completed;" (4) "the risks of establishing liability;" (5) "the risks of establishing damages;" (6) "the risks of maintaining the class action through the trial;" (7) "the ability of the defendants to withstand a greater judgment;" (8) "the range of reasonableness of the settlement fund in light of the best possible recovery;" and (9) "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."  495 F.2d at 463.  Here, all of the *Grinnell* factors weigh in favor of approval of the Agreement.

#### 1.  Further Litigation and Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1).

Reaching a settlement prior to trial avoids further expense and delay in obtaining a recovery for the class.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  Particularly in complex wage and hour litigation like this one, involving a statewide collective and state and federal statutory rights, protracted litigation is costly and burdensome, including motion practice and potential appeals regarding class certification.  *See Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *4 (S.D.N.Y. Mar. 24, 2008).

Absent settlement, the parties would have proceeded with depositions of the Named Plaintiff and select Opt In Plaintiffs.  Had the parties proceeded with depositions, they would have had to shoulder the cost of nine (9) Plaintiff depositions (Dkt. # 71), as well as depositions of Defendant's corporate representatives, and depositions of Plaintiffs' supervisors.  The parties would have also needed to engage in ESI production, including production of email and text messages by both parties.  Discovery of that magnitude would cost several thousand dollars which could be put toward resolution of the claims.

The parties would also have to engage in motion practice relating to Defendant's defenses, motions for decertification and class certification, and motions for summary judgment.  If this already three-year-old action were to proceed trial, the parties would incur even more expenses. Preparing for trial would have consumed tremendous amounts of time and resources.  Additionally, any judgment would likely be appealed, thereby extending the litigation.  The settlement, on the other hand, provides significant relief to Class Members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of preliminary approval.

### 2.  The Reaction of the Class Members (*Grinnell* Factor 2).

The Class Members have reacted positively to the settlement: none have objected to or opted out of the settlement.  Plaintiffs' Counsel also received communications from Class Members thanking us for our efforts.  Jones Decl. ¶ 14.   The support of the Class Members supports the second *Grinnell* factor.

### 3.  Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3).

Plaintiffs' Counsel has already completed a thorough investigation and ample discovery, and are well positioned to recommend settlement.  The parties exchanged document requests and

interrogatories, and exchanged over 1,000 pages of documents including payroll records, time records and company policies, and Plaintiffs' responses alleging off the clock communications.

From the discovery conducted, the parties were able to assess the nature of the alleged off the clock communications, the number of hours Plaintiffs recorded, the number of hours for which they were paid, and the number of hours (if any) that they potentially were not paid. This was sufficient information to allow Plaintiff's Counsel to evaluate the strengths and weaknesses of the claims and account for such risk in settlement. *See Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *6 (S.D.N.Y. May 11, 2010) (finding that "[t]he parties had completed enough discovery to recommend settlement . . . [where] the parties engaged in aggressive discovery efforts, obtaining voluminous amounts of documents and taking numerous depositions").

### 4. Plaintiffs Would Face Risk if the Case Proceeded (*Grinnell* Factors 4 and 5).

Although Plaintiffs believe their case is strong, it is subject to considerable risk. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y.), *aff'd sub nom. In re PaineWebber Inc. Ltd. P'ships Litig.*, 117 F.3d 721 (2d Cir. 1997). In weighing the risks of establishing liability and damages, "[t]he court must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Holocaust Litig.*, 80 F. Supp. 2d at 177 (internal quotation marks and citation omitted). Here, Plaintiffs recognize the substantial risks of the litigation, including the possibility that the case, if not settled now, might not result in any recovery or might result in a recovery that is less favorable.

Defendant's defenses presented real risks for Plaintiffs. Defendant would vigorously defend this action on the merits, and there is a chance that Defendant could prevail. Defendant categorically denies that any SMs worked off the clock, and even if they did, there were

mechanisms in place for SMs to receive compensation for such time. A trier of fact could ultimately conclude that SMs did not work off the clock and have been fully compensated for all hours worked. In that event, Plaintiffs would recover nothing. Plaintiffs also face the possibility of decertification, which would result in the Opt In Plaintiffs having to file individual actions. These individual actions would result in additional costs, and that is if those Opt In Plaintiffs decided to continue pursuing their claims after no longer having "safety in numbers". This settlement eliminates such risk as **all** Class Members can obtain relief from the settlement.

### 5. Establishing and Maintaining the Class Through Trial Presents Risk (*Grinnell* Factor 6).

The risk of obtaining class certification and maintaining collective certification is also present. While Named Plaintiff was successful in obtaining conditional certification of the FLSA claims, Defendant likely would have moved to decertify the collective and opposed Rule 23 certification of the classes. *See e.g. McEarchen v. Urban Outfitters, Inc.*, 2017 U.S. Dist. LEXIS 33335 (E.D.N.Y. Mar. 7, 2017); *Stevens v. HMSHost Corp.*, 2014 U.S. Dist. LEXIS 119653 (E.D.N.Y. Aug. 27, 2014).

The settlement avoids these risks, guaranteeing payments to all the Class Members. Accordingly, this factor favors final approval. *See Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271, 2011 WL 9380874, at *4 (S.D.N.Y. Sept. 21, 2011) (Swain, J.) (finding "the risk of obtaining and maintaining class status throughout trial" in a class and collective action wage and hour settlement "weigh[ed] in favor of final approval").

### 6. Defendant's Ability to Withstand a Greater Judgment, While Not Determinative, Favors Approval (*Grinnell* Factor 7).

Even if Defendant was able to withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178

n.9 (alterations and citation omitted)). Here, the Settlement Agreement provides Class Members with reasonable and more prompt relief than they would receive at the conclusion of the litigation, presumably years from now, and which relief is not guaranteed due to the risks involved in proving liability and damages, and the current economic volatility. Accordingly, this factor favors granting final approval.

> ### 7. The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9).

The settlement amount represents substantial value given the risks of litigation, even though the recovery could potentially be greater if Plaintiff prevailed on the merits. The determination of whether a settlement amount is reasonable "is not susceptible of a mathematical equation yielding a particularized sum." *In re Holocaust Litig.*, 80 F. Supp. 2d at 178 (quoting *In re Michael Milken & Assoc. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993) (internal quotation marks omitted)); *Ballinger v. Advance Magazine Publishers, Inc*., No. 13 Civ. 4036, 2014 WL 7495092, at *3 (S.D.N.Y. Dec. 29, 2014) ("The inquiry . . . is to see whether the settlement falls below the lowest point in the range of reasonableness.") (quoting *In re Gache*, Nos. 97 Civ. 5025, 97 Civ. 5034, 97 Civ. 5036, 1998 WL 646756, at *1 (2d Cir. Apr. 16, 1998) (internal quotation marks omitted)). "Instead, there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank*, 228 F.R.D. at 186 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972) (internal quotation marks omitted). "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2.

Here, Class Members are receiving the equivalent of compensation for one (1) hour of uncompensated overtime each week although Defendant maintains there is no liability at all. Thus, the settlement agreement fairly and reasonably resolves Plaintiffs' claims. *See, e.g.*, *Anderson v. Sara Lee Corp.*, No. 4:03-cv-00031-H, 2013 WL 12250391, at *1 (E.D.N.C. May 16, 2013) ("The Court further finds the settlement was negotiated at arm's length by the parties and is a fair and reasonable resolution of the claims asserted and released by the Plaintiffs, in light of the parties' respective prospects for success (or failure) were the case to proceed to trial on the merits."). Under the circumstances, this *Grinnell* factor is met.

### C. The Court Should Approve the FLSA Settlement Pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).

For the same reasons addressed above in the *Grinnell* analysis, the settlement warrants approval under the FLSA. In *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), the Second Circuit held that Courts or the Department of Labor must approve FLSA settlements for the releases to be effective. The core holdings of *Cheeks* are that any FLSA settlement must be fair, a reasonable compromise of disputed claims, and not have overly restrictive settlement terms. 796 F.3d at 203, 206-07. As detailed above, this is a very reasonable settlement of hotly contested claims which could have resulted in a win or loss for either party. Moreover, the settlement terms are consistent with those of many FLSA settlements approved in this Court and Circuit and the release is limited to wage and hour claims during the time that the Class Members worked as hourly, non-exempt SMs. *See Yuzary, McMahon, Pasini, supra.* Therefore, the Court should approve the FLSA settlement.[1]

---

[1] *Moses v. NY Times*, 79 F.4th 235 (2d. Cir Aug. 17, 2023) further supports final approval of the settlement. In the interest of brevity, Plaintiff incorporates by reference her Supplement filed in Support of the Motion for Preliminary Approval of the Settlement. Dkt # 81.

## IV.     CERTIFICATION OF THE CLASS IS APPROPRIATE

Under Rule 23, a class action may be maintained if all the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires that:

1.     the class is so numerous that joinder of all members is impracticable;

2.     there are questions of law or fact common to the class;

3.     the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

4.     the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  *Id.* at (b)(3).

### A.     Numerosity.

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[N]umerosity is presumed at a level of 40 members . . ." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Plaintiff clearly satisfies the numerosity requirement as there are approximately 138 class members.

### B.     Commonality.

The proposed class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Although the claims need not be identical, they must share common questions of fact or law. *Frank*, 228 F.R.D. at 181. There must be a "unifying thread" among the claims to warrant class certification. *Kamean v. Local 363, Int'l Bhd. of*

12

*Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986). Courts construe the commonality requirement liberally. *Frank*, 228 F.R.D. at 181. In Plaintiff's view, the required relationship between the claims of Plaintiff and the Class Members exists here. This case involves numerous common issues.

Here, all Plaintiffs are current or former employees of Defendant. Although they allege differing numbers of hours worked and thus different damages, all present the common claim that they worked off the clock, and were not paid for all of the hours they worked. *See, e.g., Rehberg v. Flowers Baking Co. of Jamestown*, LLC, 2015 WL 1346125, at *8, 16 (W.D.N.C. Mar. 24, 2015) (concluding that "the similarities between the Plaintiffs' claims far outweigh their differences" because "[w]hile each distributor may have carried out the essential functions of his job slightly differently, . . . all distributors were instructed to carry out their jobs subject to the Distributor Agreement, had substantially similar job duties, were subject to a common policy of being classified as independent contractors, and now claim violations . . . based on this classification."); *id.* at *17 ("Given that Defendants ha[d] a well-established company policy of classifying all distributors as independent contractors, the court is less concerned by the variations in Plaintiffs' employment circumstances."). Thus, Plaintiffs satisfy the commonality requirement.

**C.    Typicality.**

Typicality is also satisfied. Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal quotation marks omitted). "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182. "[M]inor variations in the fact patterns underlying individual claims" do not defeat typicality

13

when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux v. Celani,* 987 F.2d 931, 936-37 (2d Cir. 1993).

Here, Plaintiff's claims arise from the same factual and legal circumstances that form the bases of the Class Members' claims. Plaintiffs and the Class Members performed the same or similar job duties. Plaintiffs makes the same allegations regarding off the clock work. Because Plaintiff's wage and hour claims arise from the same factual and legal circumstances that form the basis of the Rule 23 Class Members' claims, Plaintiff satisfies the typicality requirement. *See Dorn v. Eddington Sec., Inc.*, 2011 WL 382200, at *2 ("Plaintiff satisfies Federal Rule of Civil Procedure 23(a)(3) because Plaintiffs' claims for overtime pay, regular wages, and unlawful tips arise from the same factual and legal circumstances that form the bases of the class members' claims."); *Clark v. Ecolab, Inc.*, 2009 WL 6615729, at *4 (S.D.N.Y. 2009); *Frank*, 228 F.R.D. at 182.

### D.    Adequacy.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement exists to ensure that the named representative will "have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (internal quotation marks and citations omitted); *Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (internal quotation marks omitted); *see also Campos v. Goode, No.* 10 Civ. 224, 2010 WL 5508100, at *2 (S.D.N.Y. Nov. 29, 2010); *McMahon*, No. 08 Civ. 8713, 2010 WL 2399328, at *2.

14

Here, there is no evidence that Plaintiff and the Class Members' interests are at odds – on the contrary, Plaintiff's interests are clearly aligned with the interests of the class. *See Diaz v. E. Locating Serv., Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010) (finding adequacy requirement met where plaintiffs' interests were not antagonistic or at odds with those of class members); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *2 (S.D.N.Y. Aug. 23, 2010) (same); *McMahon*, 2010 WL 2399328 at *2 (same).   Plaintiff and its counsel, Shavitz Law Group, P.A. ("SLG") have diligently prosecuted this Action on behalf of the Class Members, including litigating this case for over two and a half years, through conditional certification, written discovery, preparation to engage in further discovery, and negotiating a favorable settlement. Further discovery would lead to motions for decertification, class certification, and summary judgment.

Plaintiff and SLG have obtained a fair and immediate recovery to the Class Members without continued protracted litigation.

### E.    Certification Is Proper Under Rule 23(b)(3).

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).   The inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).   These requirements are met for settlement purposes here.

### 1.    Common Questions Predominate.

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole…. predominate over those issues that are subject

15

only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (internal quotation marks omitted), abrogated on other grounds by *Miles v. Merrill Lynch & Co. In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006)). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check*, 280 F.3d at 139. Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of N.Y.*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, the Class Members' common factual allegations and common legal theory predominate over any factual or legal variations among Class Members. *See Clark*, 2009 WL 6615729, at *5 (common factual allegations and common legal theory predominated over factual and legal variations among Class Members in wage and hour misclassification case); *Torres*, No. 04 Civ. 3316, 2006 WL 2819730 at *16 (plaintiffs "introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay," and "this issue predominates over any individual calculations of overtime wages"). The only individualized issues pertain to the calculation of damages, and it is well-settled that individualized damages calculations do not defeat predominance. *See Frank*, 228 F.R.D. at 183 (collecting cases holding that calculation of damages in overtime litigation does not impact the predominance analysis). Plaintiff therefore satisfies Rule 23(b)(3).

### 2. A Class Action Is a Superior Mechanism.

Plaintiff also satisfies the superiority requirement. Superiority analyzes whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of

the claims in the particular forum. Fed. R. Civ. P. 23(b)(3). Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually. Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial.") (internal citation omitted); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement.") Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule." *In re Visa Check*, 280 F.3d at 140 (internal quotation marks omitted); *Diaz*, 2010 WL 5507912, at *3.

Plaintiff and Class Members have limited financial resources with which to prosecute individual actions. Class treatment will create uniform resolution of the issues and achieve judicial economy, convenience and fairness to all parties.

## V.    THE COURT SHOULD APPROVE THE ENHANCEMENT AWARD BECAUSE PLAINTIFF'S EFFORTS CONTRIBUTED GREATLY TO THIS SETTLEMENT.

The request for $3,500.00 Enhancement Award to the Named Plaintiff is reasonable compensation for her representation of the Class Members.  Courts routinely approve service awards in these types of cases and the Enhancement Award Plaintiffs deserve additional compensation for their efforts and for helping achieve this settlement.  *Yuzary*, 2013 U.S. Dist. LEXIS 144327, at *32; *Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008); *Pasini*, 2018 U.S. Dist. LEXIS 199213, at *6; *Melito v. Experian Mktg. Solutions, Inc.,* 923 F.3d 85, 96 (2d. Cir. 2019); *see also Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 721 (2d Cir.

17

2023); *Hyland v. Navient Corp.,* 48 F.4[th] 110, 117 (2d. Cir. 2022). Service awards are "important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff." *Delijanin v. Wolfgang's Steakhouse Inc.*, No. 18 Civ. 7854, 2021 WL 535635, at *4 (S.D.N.Y. Feb. 12, 2021) (quoting *Diaz v. Scores Holding Co., Inc.*, No. 07 Civ. 8718, 2011 WL 6399468, at *3 (S.D.N.Y. July 11, 2011)); *see also Puglisi v. TD Bank*, No. 13 Civ. 637 (E.D.N.Y. July 30, 2015)) (Brown, Mag.) ("I will note that given the rise of the information technology age that we're in [being a named plaintiff] is not without risk . . . it's something that stays with you forever.").

In examining service awards, courts consider the: (1) risks incurred; (2) effort expended prosecuting the case, and value added to it; and (3) ultimate recovery. *Frank,* 228 F.R.D. at 187 (awards totaled 8.4% of the settlement); *Diaz v. Scores Holding Co*., 2011 U.S. Dist. LEXIS 112187, at *9-11 ("service awards are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff"); *Velez v. Majik Cleaning Serv*., 2007 U.S. Dist. LEXIS 46223, at *23 (S.D.N.Y. June 22, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.").

Bethel has actively participated in this litigation since its inception. Prior to filing this case, Bethel did an extensive amount of work gathering documents and summarizing relevant facts for the Complaint. She also participated in preparation of the Complaint. Bethel also actively participated in discovery, and provided additional facts in preparation for mediation. She has kept

in contact with counsel, making herself available to answer questions at every stage of the case, advocating for Class Members, and always put their interests before her own. In taking on the role of Named Plaintiff, Bethel has subjected herself to potentially being blacklisted having publicly asserted a claim against her former employer.

The requested $3,500.00 enhancement award for Bethel's active participation in the litigation is reasonable.  In fact, the award "is comparatively on the lower end of awards deemed reasonable." *Thompson v. Qwest Corp.*, No. 17-cv-1745-WJM-KMT, 2018 WL 2183988, at *3 (D. Colo. May 11, 2018); *See also Osman*, 2018 WL 2095172, at *2 ($7,500); *Day*, 2018 WL 2473472, at *2 ($7,000); *Graudins*, 2017 WL 736684, at *9 ($7,500); *Devlin*, 2016 WL 7178338, at *11 ($7,500); *Bozak*, 2014 WL 3778211, at *4 ($10,000); *Smith*, 2007 WL 119157, at *4 ($15,000).

## VI.    PLAINTIFFS' COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND COSTS ARE REASONABLE AND SHOULD BE APPROVED

### A. Attorneys' Fees

Per the Settlement Agreement, SLG will seek an award of attorneys' fees in the amount of $145,833.32 (representing one third of the gross settlement amount), and reimbursement of $5,992.00.  Jones Decl. ¶ 9.  As discussed below, Plaintiffs' Counsel's requests are reasonable and consistent with class action litigation in this Court and Circuit.

Attorneys' fees of one-third of a common fund settlement are reasonable and "consistent with the norms of class litigation in this circuit."  *Mendes-Garcia v. 77 Deerhurst Corp.,* No. 11 Civ. 2797, 2014 U.S. Dist. LEXIS 188290, at *15 (S.D.N.Y. Aug. 19, 2014); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 U.S. Dist. LEXIS 21102 (E.D.N.Y. Feb. 18, 2011) (same; citing cases); *Bahena*, No. 15 Civ. 1507 at *5 (Final Approval Order at ECF No. 182, approving attorneys' fees of one-third of settlement fund); *Pasini*, 2018 U.S. Dist. LEXIS 199213, at *6

(same); *Silva*, 2012 U.S. Dist. LEXIS 89485, at *6 (same); *Yuzary*, 2013 U.S. Dist. LEXIS 144327, at *26 (holding that attorneys' fee awards of one-third of a common fund are "reasonable, paying clients typically pay one-third of their recoveries under private retainer agreements.") (quotation omitted).  Courts routinely award counsel one-third of the gross common fund as attorneys' fees and reimbursement of litigation expenses.

       To determine the reasonableness of the fee award, courts consider the following factors: "(1) time and labor expended; (2) novelty and difficulty of the questions raised; (3) skill required to properly perform the legal services; (4) attorney's opportunity costs in pressing the litigation; (5) customary fee for like work; (6) attorney's expectation at the outset of litigation; (7) time limitations imposed by the client or circumstances; (8) amount in controversy and results obtained; (9) experience, reputation and ability of the attorney; (10) undesirability of the case within the legal community in which the suit arose; (11) nature and length of the professional relationship between the attorney and client; and (12) fee awards in similar cases." *Smith*, 2007 WL 119157, at *1.

       Here, Plaintiffs' counsel devoted 519.1 hours of attorney and paralegal time to this matter, amounting to $294,195.00 in fees that they are requesting.  Therefore, SLG has already incurred more than double the amount of the attorneys' fees it will recover under the Settlement, and still has additional work to perform to effectuate the settlement.  SLG's lodestar is outlined below:

| Timekeeper | Rate | Hours | Totals |
|---|---|---|---|
| Gregg Shavitz | $750.00 | 61.3 | $45,975.00 |
| Camar Jones | $600.00 | 318.5 | $191,100.00 |
| Michael Palitz | $600.00 | 80.5 | $48,300.00 |
| Paralegals | $150.00 | 58.8 | $8,820.00 |
| **Totals** | | **519.1** | **$294,195.00** |

This work includes, among many other things:

- An in-depth, pre-suit investigation of Defendant's compensation practices with respect to SMs;

- Drafting motions, including for conditional certification under the FLSA, discovery disputes between the parties, and briefing motions for preliminary and final approval of the settlement;

- Engaging in discovery, responding to interrogatories and requests for production on behalf of Plaintiff and the Opt In Plaintiffs, and exchanging and reviewing over 1,000 pages of documents;

- Preparing for and attending mediation in this action;

- Negotiating and agreeing upon the terms of the Settlement Agreement; and

- Working with the Settlement Administrator to facilitate notice to the Class Members, responding to questions from the Class Members.

In addition to the above tasks, Plaintiffs' Counsel will perform additional tasks going forward to complete the administration of the settlement. If the Court finally approves the settlement, Plaintiffs' Counsel will work with the Settlement Administrator to ensure that all payments are made, and that the Settlement Administrator completes all of the remaining duties to finalize the settlement. Plaintiffs' Counsel will also communicate with the Class Members about the settlement, the timing of payment, the scope of the release, and other matters. Plaintiffs' Counsel anticipates spending approximately 20 more hours to finalize the administration of the settlement, which is a conservative estimate. *DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4494, 2015 U.S. Dist. LEXIS 65261, at *14 (S.D.N.Y. May 11, 2015) ("The fact that Plaintiffs' Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request.").

"It is not necessary for the Court to conduct a lodestar analysis, but if one were to 'cross-check' the requested 33.33% fee against the range of reasonable fee awards under a lodestar

analysis, it is apparent that a 'lodestar cross-check' confirms the reasonableness of the requested percentage fee." *Smith*, 2007 WL 119157, at *3.  Courts "loosely use the lodestar method as a 'baseline' or as a 'cross check'" of the percentage fee award request.  *Mendes-Garcia*, 2014 U.S. Dist. LEXIS 188290, at *15.  In calculating the lodestar for "cross check" purposes, the "hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50.  Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case . . . ." *Id*.  The lodestar "cross check" further confirms the appropriateness of Plaintiffs' counsel's fee request.  SLG expended 519.1 hours to litigate these claims, resulting in a total lodestar of $294,195.00.  Jones Decl. at ¶ 21.  The attorneys' fees SLG is seeking represents a 60% discount from the attorneys' fees actually incurred.

### B.  The Magnitude and Complexity of this Litigation and the Risk of Litigation.

This was a very complex litigation involving FLSA and New York state law claims for all SMs, significant discovery, substantial document production, significant motion practice, including motion for FLSA conditional certification, mediation, and complicated settlement discussions.  This case was also risky for Plaintiff and could have resulted in no recovery at all for Plaintiff and the Class Members.  The parties fiercely disputed the merits of the claims, whether the case would remain a collective action or be decertified, and whether the Court would ultimately grant class certification.  It is very likely that, absent this settlement, Defendant would have taken many depositions of SMs, and sought decertification of this action, as well as challenged class certification.  Even if Plaintiff were able to defeat a summary judgment motion by Defendant, Plaintiff still faced the uncertainty of a jury trial and then the appeals to follow.

If this case did not settle, the parties undoubtedly faced years of litigation, a likely trial, and appeals.  Despite these challenges, Plaintiffs' Counsel took this matter on a contingency basis

with no guarantee of repayment and was able to obtain this strong settlement for the Class Members. Accordingly, these *Goldberger* factors support Plaintiffs' Counsel's requested fee award.

### C. The Quality of Representation

"To evaluate the quality of representation, courts review the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 400 (S.D.N.Y. 2013). The recovery obtained for the Plaintiff and the Class Members is substantial. Plaintiffs' Counsel also has experience litigating FLSA collective actions and state law overtime pay class actions, and has been appointed Plaintiffs' Counsel on numerous occasions. Jones Decl. ¶ 17.

### D. The Requested Fee in Relation to the Settlement

"[I]n wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 477 (S.D.N.Y. 2013). "Fee awards in wage and hour cases are meant to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Id.* (quotation omitted). "If such fee awards are not granted, 'wage and hour abuses would go without a remedy because attorneys would be unwilling to take on the risk.'" *Mendes-Garcia,* No. 11 Civ. 2797, 2014 U.S. Dist. LEXIS 188290, at *13. This is particularly true where, as here, the individual Class Members' claims are relatively small and the fees and costs necessary to litigate the claims individually would exceed the value of their claims.

As this Court made clear in *Mendes-Garcia,* "the trend in this Circuit is to use the percentage of the fund method to compensate attorneys in common fund cases like this one. Courts have found that applying the percentage-of-recovery method is sound policy as it directly aligns

the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation."  2014 U.S. Dist. LEXIS 188290, at *13-14 (citing cases; quotations omitted).  "[T]he trend in the Second Circuit has been to apply the percentage-of-recovery method and loosely use the lodestar method as a 'baseline' or as a 'cross check.'"  *Id.* at *15 (citing cases).

Here, the Class Members are obtaining a substantial recovery by receiving the equivalent of one (1) hour of overtime compensation each week.  In contrast, SLG is receiving an attorneys' fee award that has already been discounted 60%, with additional work to be performed, highlighting the reasonableness of the attorneys' fee award, and favoring final approval of the settlement.

### E.  Public Policy Considerations Support Plaintiff's Counsel's Fee Request

"Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by 'private attorneys general,' attorneys who fill the private attorney general role must be adequately compensated for their efforts."  *Yuzary*, 2013 U.S. Dist. LEXIS 144327, at *25-26 (quoting *McMahon*, 2010 U.S. Dist. LEXIS 18913, at *19-20).   "If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk."  *Yuzary*, 2013 U.S. Dist. LEXIS 144327, at *26; *Sand v. Greenberg*, No. 08 Civ. 7840, 2010 U.S. Dist. LEXIS 1120, at *9 (S.D.N.Y. Jan. 7, 2010) ("Attorneys' fees spring from an entirely different source. They are not meant to compensate plaintiffs, but rather to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel. But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.").

"Public policy considerations provide further support for the requested fee award, given that the FLSA is a remedial statute whose purpose is served by adequately compensating attorneys who protect wage and hour rights." *Mendes-Garcia*, 2014 U.S. Dist. LEXIS 188290, at *15. If not for the efforts of Plaintiffs' counsel, this settlement would not have been obtained. Plaintiffs' counsel took on this matter against a well-funded corporation with no guarantee of any repayment for their time and efforts. SLG expended 519.1 hours to litigate these claims, amounting to $294,195.00 in attorneys' fees. Jones Decl. at ¶ 21. The settlement achieved an excellent result for the Class Members – none of whom objected to the settlement or Plaintiffs' Counsel's fee request (which was identified in the Notice). Based on the foregoing, this *Goldberger* factor supports an attorneys' fee award of one-third of the Settlement Fund.

### F. Costs

The Court should also order the reimbursement of counsel's litigation expenses. "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients." *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (internal citation and quotation marks omitted); *See, e.g.*, *Smith et al. v. Citigroup. Inc.*, No. 07 Civ. 1791 (S.D.N.Y. Sept. 22, 2010) ("An attorney who creates or preserves a common fund by judgment or settlement for the benefit of a class is entitled to receive reimbursement of reasonable fees and expenses involved . . . . Class Counsel's request for reimbursement of actual expenses incurred to date totaling $87,433.32 is hereby approved as fair and reasonable."); *Osman v. Grube, Inc.*, No. 3:16-cv-00802-JJH, 2018 WL 2095172, at *6 (N.D. Ohio May 4, 2018) (same); *Graudins v. Kop Kilt, LLC*, No. 14-cv-2589, 2017 WL 736684, at *11 (E.D. Pa. Feb. 24, 2017); *Devlin v. Ferrandino & Son, Inc.*, No. 15-cv-4976, 2016 WL 7178338, at *11 (E.D. Pa. Dec. 9, 2016)

(same); *Bozak v. FedEx Ground Package Sys., Inc.*, No. 3:11-cv-00738-RNC, 2014 WL 3778211, at *7 (D. Conn. July 31, 2014) (approving "over $30,557.00 in out of pocket costs prosecuting this case, including costs for electronic research, court fees, court reporters, deposition transcripts, postage and courier fees, working meals, photocopies, telephone calls, travel and Plaintiffs' portion of the mediator's fees," as well as $686,666.66 for attorneys' fees).

SLG has incurred $5,992.00 in costs, as outlined below:

| Item | Amount |
|------|--------|
| Eastern District of New York filing fee | $402.00 |
| Service of Process | $210.00 |
| Pro Hac Vice filing fee | $200.00 |
| Notice Administration | $2,630.00 |
| Mediator fee | $2,550.00 |
| **Total** | **$5,992.00** |

All of the expenses for which Plaintiff seeks reimbursement were reasonably and necessarily incurred in obtaining this result for Plaintiff and the Class Members.

### <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion and enter the Proposed Order.

Dated: March 20, 2024
      Boca Raton, FL

Respectfully submitted,

**/s/ CAMAR R. JONES**
Camar R. Jones (admitted *pro hac* vice)
**SHAVITZ LAW GROUP, P.A.**
951 Yamato Road, Suite 285
Boca Raton, FL 33431
Tel: 561-447-8888
Fax: 561-447-8831
cjones@shavitzlaw.com

**SHAVITZ LAW GROUP, P.A.**
Michael J. Palitz
SHAVITZ LAW GROUP, P.A.
830 3rd Avenue, 5th Floor
New York, New York 10022
Tel:    (800) 616-4000
Fax:   (561) 447-8831
mpalitz@shavitzlaw.com
***Attorneys for Plaintiffs***

<u>**CERTIFICATE OF SERVICE**</u>

      I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of Court using CM/ECF on March 20, 2024.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

      /s/ Camar R. Jones
      Camar R. Jones

27